MAGILL, Senior Circuit Judge:
 

 Daniel and Barbara Richmond appeal from the bankruptcy court’s entry of judgment in favor of the Internal Revenue Service (IRS), and the district court’s affir-mance of that judgment, on several claims arising from the IRS’s attempts to assess and collect tax deficiencies for the 1978 and 1979 tax years. They contend that (1)
 
 *1101
 
 the IRS’s collection efforts in 1989 violated the statute of limitations, (2) their discharge from bankruptcy in 1990 discharged them from any liability for the 1978 and 1979 tax years, and (3) the IRS violated the automatic stay. We affirm.
 

 I.
 

 The Richmonds filed their 1978 tax return on July 7, 1980, and filed their 1979 tax return on March 27,' 1981. Because the Richmonds did not pay the taxes they listed- as due and owing, the IRS assessed tax return deficiencies against them on August 11, 1980 and May 4, 1981, respectively.
 

 A. The First Bankruptcy
 

 On July 27,1982, before paying their tax return deficiencies, the Richmonds petitioned for bankruptcy under Chapter 7 of the Bankruptcy Code. While the bankruptcy proceedings were pending, the IRS requested the Richmonds to execute Special Consent to Extend Time To Assess Tax Forms .for the 1978 and 1979 tax years. The Richmonds complied; In 1985, after auditing the Richmonds’ 1978 and 1979 returns, the IRS sent them a statutory notice of
 
 [1]
 
 deficiency identifying additional taxes owed. However, the IRS was precluded from assessing or attempting to collect these additional taxes, or audit deficiencies, because of the automatic stay.
 

 On April 1, 1988, the bankruptcy court entered an order denying the Richmonds a discharge from bankruptcy. However, the bankruptcy court never informed the IRS about its order and never entered the order on the case docket. The IRS did not become aware of the order until September 21, 1989. In October 1989 the IRS auctioned some of the Richmonds’s property and applied the sale proceeds to cover the tax return deficiencies assessed in 1980 and 1981.
 

 B. The Second Bankruptcy
 

 Before the IRS' assessed the audit deficiencies against the Richmonds, they filed a second petition for bankruptcy on July 27, 1990. They received a discharge in that case on November 30, 1990. Subsequently, in 1993, the IRS assessed the audit deficiencies against them with respect to their 1978 and 1979 tax returns. In an effort to. collect those deficiencies, the IRS served Barbara Richmond’s employer with, a continuing levy on her wages. .
 

 C.The Present Litigation
 

 After Mrs. Richmond’s employer was served with the continuing levy, the Rich-monds, filed suit against the IRS in the bankruptcy court. They claimed that (1) the IRS’s 1989 sale of their property violated the applicable statute of limitations, (2) their ^second bankruptcy discharged them from all liability on the audit deficiencies related to their 1978 and 1979' tax returns, and (3) the IRS violated the automatic stay during their first bankruptcy by requesting them to execute the Spéeial Consent to Extend Time To Assess Tax Forms. The bankruptcy court, and the district court on appeal, denied each of these claims.
 

 II.
 

 ‘We review the district court’s decision on an .appeal from a bankruptcy court
 
 de novo.” Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),
 
 912 F.2d 1162, 1166 (9th Cir.1990). In so doing, we review the bankruptcy, court’s findings of fact under the clearly erroneous standard and its conclusions of law
 
 de novo,, see id.,
 
 cognizant “of the established policy that limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.”
 
 West v. United States (In re West),
 
 5 F.3d 423, 426 (9th Cir.1993) (quotations omitted).
 

 The Richmonds first contend that the IRS was time-barred from selling their property in October of 1989 and applying the proceeds of the sale to satisfy their tax deficiencies. This argument is meritless. Despite filing tax returns for the 1978 and
 
 *1102
 
 1979 tax years, the Richmonds failed to remit any taxes to the government. The IRS assessed tax deficiencies against the Richmonds for the amounts shown as due on their returns on August 11, 1980 and May 4, 1981, respectively. Typically, the IRS has only six years to collect an assessed deficiency.
 
 See
 
 26 U.S.C. § 6502(a) (1988). However, this six-year period of limitations ceases to run from the time a taxpayer files a petition for bankruptcy until six months after the automatic stay has lifted.
 
 See West,
 
 5 F.3d at 425 n. 3; 26 U.S.C. § 6503® (1988).
 
 [1]
 
 In this case, the Richmonds filed their first petition for bankruptcy on July 20, 1982, less than two years after the IRS assessed either deficiency. The bankruptcy court denied the Richmonds a discharge on April 1, 1988, thus lifting the automatic stay.
 
 See
 
 11 U.S.C. § 362(c)(2) (1988). The respective limitations periods for collecting the assessed deficiencies, therefore, were suspended between July 20, 1982 and October 1, 1988 (six months after the bankruptcy court denied the discharge). The IRS then sold the property and applied the proceeds of the sale to reduce the Rich-monds’ tax obligations in October 1989, only one year after the periods resumed running. The IRS’s collection activities, thus, were taken well within the six-year limitations period set forth in § 6502.
 

 The Richmonds next contend that their second bankruptcy proceeding discharged them from any further liabilities concerning their 1978 and 1979 tax returns. They argue that the IRS was prohibited from assessing any further tax deficiencies against them for the 1978-and 1979 tax years subsequent to their discharge in the second bankruptcy. We disagree. .
 

 The Richmonds filed their second petition for bankruptcy protection on July 27, 1990. This time, the bankruptcy court granted them a discharge on November 30, 1990, effectively discharging them from substantially all debts they incurred prior to July 27, 1990.
 
 See
 
 11 U.S.C. § 524 (1988). However, they were riot discharged from liability for taxes entitled to priority under 11 U.S.C. § 507(a)(7) (1988).
 
 See
 
 11 U.S.C. § 523(a)(1)(A) (1988). Accordingly, they were not discharged from liability for taxes that were “not assessed before, but assessable, under applicable law ..., after, the commencement of the case.” 11 U.S.C. § 507(a)(7)(A)(iii). The sole question here is whether the IRS could assess any more tax deficiencies for the 1978 and 1979 tax years against the Richmonds after July 27,1990.
 

 Typically, the IRS has only three years from the date a return is filed to make a deficiency assessment.
 
 See
 
 26 U.S.C. § 6501(a) (1988). However, that three-year period is “suspended for the period during which the Secretary is prohibited ... from making the assessment ... and ... for ... 60 days thereafter.” 26 U.S.C. § 6503® (1988). The Richmonds contend that the automatic stay was lifted at the time their discharge in the first bankruptcy was denied on April 1,1988 and that the three-year period resumed running on May 31, 1988 (sixty days after the bankruptcy court denied the discharge). Under this analysis, it is undisputed that the IRS could no longer assess deficiencies against the Richmonds as of July 27, 1990. The IRS contends that the three-year period remained suspended until it received notice of the denial of discharge on September 21, 1989. Under this analysis, it is undisputed that the IRS could still assess deficiencies after July 27, 1990. The bankruptcy court and district court agreed with the IRS.
 

 Although the automatic stay in the first bankruptcy was lifted when the bankruptcy court entered its April 1, 1988 order denying the Richmonds a discharge,
 
 see
 
 11 U.S.C. § 362(c)(2)(C), the IRS did not receive any notice about the April 1, 1988 order until September 21, 1989. The bankruptcy court never entered the order on the case docket and the bankruptcy court clerk, in violation of Bankruptcy
 
 *1103
 
 Rule 4006, never notified the IRS about the order.
 
 See
 
 Fed. R. Bankr.P. 4006 (providing that the clerk “shall promptly give notice [of a bankruptcy court’s denial of discharge] to all creditors”). Moreover, despite the IRS specifically asking the bankruptcy court clerk about the status of the Richmonds’ first bankruptcy case on thirteen separate occasions between May 1988 and September 1989, the clerk never informed the IRS that the court had denied a discharge.
 

 “[A]ctual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests” of a creditor in bankruptcy.
 
 Tulsa Profl Collection Servs., Inc. v. Pope,
 
 485 U.S. 478, 485, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (quotations omitted). Even the IRS, although not entitled to constitutional protection as a governmental entity, is entitled to receive all notice provided for under the Bankruptcy Code and the Bankruptcy Rules before its rights as a creditor are impaired.
 
 See City of New York v. New York, New Haven & Hartford R.R.,
 
 344 U.S. 293, 296-97, 73 S.Ct. 299, 97 L.Ed. 333 (1953) (holding that a governmental creditor has a right to assume that it will receive all of the notices required by the Bankruptcy Code before its claim against the debtor would be barred);
 
 Morgan v. Barsky (In re Barsky),
 
 85 B.R. 550, 553 (C.D.Cal.1988) (a creditor is entitled to assume that it will receive all notice required under the Bankruptcy Rules),
 
 aff'd
 
 933 F.2d 1013, 1014 (9th Cir.1991);
 
 In re Vaughn,
 
 151 B.R. 87, 89 (Bankr.W.D.Tex.1993) (“governmental entities are entitled to whatever statutory due process is provided in a given legislative scheme” (emphasis omitted)). Accordingly, the IRS was entitled to rely on Bankruptcy Rule 4006 for notification when the discharge was denied. This is especially true here, where the IRS repeatedly attempted to ascertain the status of the Richmonds’ first bankruptcy proceeding but the bankruptcy courts and bankruptcy court clerk’s actions effectively prevented it from learning of the denial of discharge.
 

 Under these circumstances, we hold that the limitations periods remained suspended until the IRS received notice of the denial of discharge. Holding otherwise would eviscerate the IRS’s entitlement to rely on the Bankruptcy Rules’ notice provisions and would contradict the purpose of Rule 4006.
 
 See
 
 Lawrence P. King, 9 Collier on Bankruptcy ¶ 4006.01[1] (15th ed. rev.1998) (Rule 4006 promulgated to “guarantee[ ] all creditors notice if the discharge is ... denied” so that they will know that the automatic stay has been lifted and “may file suit against the debtor or pursue other collection remedies”). Having the right to rely on Rule 4006 for notification, the IRS also had the right to believe that the automatic stay remained in effect and that the limitations periods remained suspended until it received notification. Because the three-year limitations periods were suspended between July 20, 1982 and September 21, 1989, tax deficiencies for the 1978 and 1979 tax years remained assessable until November 8, 1990 and July 28, 1991, respectively-well after the Richmonds filed their second bankruptcy petition. Therefore, the Rich-monds were not discharged from liabilities for those tax years at the conclusion of their second bankruptcy.
 
 [2]
 

 The Richmonds finally contend that the IRS violated the automatic stay during their first bankruptcy by requesting them to sign Consent To Extend Time To Assess forms in 1983 while the bankruptcy proceeding was pending. At the time of the IRS’s conduct, the Bankruptcy Code specifically permitted the IRS to issue a notice of tax deficiency notwithstanding the existence of the automatic stay.
 
 See
 
 11 U.S.C. § 362(b)(8) (1982). It is undisputed that the IRS sent the forms to the
 
 *1104
 
 Richmonds as part of its usual procedure for determining tax deficiencies. Because these forms were an integrated part of the procedure for determining tax deficiencies, they “fall within the umbra of § 862(b)(8).”
 
 In re Hardy,
 
 39 B.R. 64, 65-66 (Bankr.E.D.Pa.1984). Accordingly, the IRS did not violate the automatic stay.
 

 III.
 

 For the foregoing reasons, the district court is AFFIRMED.
 

 [1]
 

 . Now codified at 26 U.S.C. § 6503(h) (1994).
 

 [2]
 

 . We reject the Richmonds' claim that 11 U.S.C. § 108(c) required the IRS to commence assessment of the Richmonds' audit deficiencies before the end of the periods provided for in 26 U.S.C. §§ 6501(a) and 6503(h).