210 F.3d 995 (9th Cir. 2000)
 In re CELEBRITY HOME ENTERTAINMENT, INC.,Debtor.
MAUREEN A. TIGHE, United States Trustee for Region 16,Appellant,
v.
CELEBRITY HOME ENTERTAINMENT INC., Appellee.
In re CELEBRITY DUPLICATING SERVICES, INC.,Debtor.
MAUREEN A. TIGHE, United States Trustee for Region16 Appellant,
v.
CELEBRITY DUPLICATING SERVICES,INC.,Appellee.
 Nos. 98-55282, 98-55285
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 3, 1999
Filed April 21, 2000
 
 COUNSEL: Paul Bridenhagen, United States Department of Justice, Washington, D.C., for the appellant.
 Leon L. Vickman, Encino, California, for the appellees.
 Appeals from the United States District Court for the Central District of California; Dickran Tevrizian, District Judge, Presiding. D.C. No. CV-97-04725-DT,
 Before: Harry Pregerson, John T. Noonan and Diarmuid F. O'Scannlain, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The Bankruptcy Code authorizes the United States Trustee to collect "quarterly fees" from a party who files for Chapter 11 bankruptcy. See 28 U.S.C. S 1930(a)(6). The quarterly fee is calculated according to the amount of disbursements to creditors during each quarter of the debtor's case. The question presented for our review is whether disbursements by a reorganized debtor after confirmation of the reorganization plan are subject to S 1930(a)(6)'s quarterly fee schedule. We have jurisdiction pursuant to 28 U.S.C. S 158(a). We hold that the term "disbursements" includes payments made by a reorganized debtor during the post-confirmation period.
 
 
 2
 * In April 1991 debtors Celebrity Home Entertainment, Inc. and Celebrity Duplicating Services, Inc. (collectively "Debtors")[1] voluntarily filed for bankruptcy relief under the reorganization provisions of Chapter 11 of the Bankruptcy Code, codified at 11 U.S.C. SS 1101-1174. The bankruptcy court confirmed Debtors' reorganization plan in July 1995. In February 1997 Debtors filed a motion for final decree to close the Chapter 11 case. In that motion, Debtors argued that they were not required to pay any post-confirmation quarterly fees because their reorganization plan was confirmed before the effective date of the 1996 amendment to S 1930(a)(6). Thus, according to Debtors, even if the amendment extended quarterly fees into the post-confirmation period, it was inapplicable to their case. Two months later, United States Trustee Maureen A. Tighe ("U.S. Trustee") filed a motion (1) to dismiss or convert the case pursuant to 11 U.S.C. S 1112(b) for failure to pay U.S. Trustee quarterly fees, (2) to fix administrative payment, and (3) to order payment. Debtors opposed the motion, again asserting that they owed no postconfirmation quarterly fees, or alternatively, that they owed only the minimum quarterly fee due when there are zero postconfirmation disbursements.
 
 
 3
 The bankruptcy court ordered Debtors to pay the minimum quarterly fee for the third and fourth quarters of 1996 and the first quarter of 1997. The U.S. Trustee appealed to the district court,[2] which affirmed the bankruptcy court's order. Relying on St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525, 1534 (9th Cir. 1994), modified, 46 F.3d 969 (9th Cir. 1995), the district court held that the term "disbursements" includes only payments by the bankruptcy estate. Because the bankruptcy estate ceased to exist when the reorganization plan was confirmed, the district court concluded that the reorganized Debtors could not have made any disbursements. Accordingly, the district court awarded the U.S. Trustee the minimum quarterly fee due in a quarter in which zero disbursements are made.
 
 II
 
 4
 We review de novo a district court's decision reviewing a bankruptcy court's decision. See Richmond v. United States, 172 F.3d 1099, 1101 (9th Cir. 1999). We also review de novo a bankruptcy court's interpretation of the Bankruptcy Code. See In re Federated Group, Inc., 107 F.3d 730, 732 (9th Cir. 1997).
 
 
 5
 The Bankruptcy Code authorizes the U.S. Trustee to collect quarterly fees as follows:
 
 
 6
 (a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the bankruptcy court . . . the following filing fees:
 
 
 7
 * * *
 
 
 8
 (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11, title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000 . . . .
 
 
 9
 28 U.S.C. S 1930(a)(6) (emphases added). Simply put, S 1930(a)(6) authorizes the U.S. Trustee to collect a quarterly fee from the parties commencing a case under Title 11, with the amount of the quarterly fee to be calculated according to a graduated scale based on the total sum of disbursements. "Disbursements" is an "expansive" term that captures "all payments," whether to secured or unsecured creditors. See St. Angelo, 38 F.3d at 1534. This appeal arises because S 1930(a)(6) does not specify whether the term "disbursements" includes post-confirmation payments made by a reorganized debtor.[3]
 
 
 10
 Because the statutory language does not resolve this question, we look to the statute's legislative history for guidance. See United States v. Hockings, 129 F.3d 1069, 1071 (9th Cir. 1997). Prior to January 1996, S 1930(a)(6) stated that "a quarterly fee shall be paid to the United States Trustee . . . for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first. See 28 U.S.C. S 1930(a)(6) (West 1994) (emphasis added). Congress amended S 1930(a)(6) in January 1996 by deleting the words "a plan is confirmed or. " See Balanced Budget Downpayment Act, I, Pub. L. No. 104-99, Title II, S 211, 110 Stat. 26, 37-38. The effect of this amendment was to extend quarterly fees payable by Chapter 11 debtors to the U.S. Trustee into the post-confirmation period.
 
 
 11
 The legislative history of the January 1996 amendment reveals that Congress intended the term "disbursements" to include post-confirmation disbursements:
 
 
 12
 [U]nder section 111, the conferees agree to include an extension of post-confirmation quarterly fee pay ments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending Chapter 11 cases with con firmed reorganization plans.
 
 
 13
 H.R. Conf. Rep. 104-378, 104th Cong., 1st Sess. (1995); 141 Cong. Rec. H13894 (Dec. 4, 1995) (emphasis added). Moreover, Congress's declared purpose in passing the 1996 amendments was to increase revenue to the U.S. Trustee. See id.; H.R. Rep. 104-196, 104th Cong., 1st Sess. at 16-17 (1995) (noting the need to increase revenue under the statute). It accomplished this purpose by extending the quarterly fees payable under S 1930(a)(6) into the post-confirmation period, and by increasing the schedule of fees. If the term "disbursements" were limited to payments by a bankruptcy estate, this amendment would have only minimal impact. A bankruptcy estate usually ceases to exist after a reorganization plan is confirmed. See 11 U.S.C.A. S 1141(b); see also Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 587 (9th Cir. 1993) (stating that confirmation terminates the existence of the bankruptcy estate unless the plan provides for the estate to continue). Thus, most reorganized debtors would have to pay only the minimum quarterly fee which is due when there are zero disbursements.
 
 
 14
 Finally, our decision in St. Angelo is not binding precedent for the proposition that the term "disbursements " includes only "payments from the bankruptcy estate." In St. Angelo, we stated that "a plain language reading of the statute shows that Congress clearly intended `disbursements' to include all payments from the bankruptcy estate." 38 F.3d at 1534 (emphasis added). The St. Angelo opinion does not say that disbursements are limited to payments from a bankruptcy estate.
 
 
 15
 The issue in St. Angelo was whether a payment to a secured creditor was a statutory disbursement. We held that the term "disbursements" includes payments to secured creditors from proceeds of the sale of secured assets. See id. at 1534. We did not decide in St. Angelo whether payments by an entity other than the bankruptcy estate might also constitute "disbursements." Moreover, St. Angelo was decided in 1994, before the January 1996 amendment to S 1930(a)(6). Thus, we had no reason to distinguish between payments made by the bankruptcy estate and payments made by a reorganized debtor during the post-confirmation period. "[P]rior to the 1996 Amendment there was simply no other source for [quarterly fees] aside from the bankruptcy estate." In re A.H. Robins Co., Inc., 219 B.R. 145, 151 (Bankr. E.D. Va. 1998) (holding that all post-confirmation payments made by reorganized debtors, as well as payments made from the bankruptcy estate, constitute "disbursements" for the purposes of the January 1996 amendment to S 1930(a)(6)).
 
 III
 
 16
 We reverse the ruling that Debtors owe only the minimum quarterly fees on their post-confirmation payments. We remand to the district court to calculate the quarterly fee owed by Debtors in accordance with the views expressed in this opinion.[4]
 
 
 17
 REVERSED AND REMANDED for calculation of quarterly fees owed by Debtors in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Debtors' cases are identical in all material respects and were joined forthis appeal.
 
 
 [2]
 Debtors did not appeal the minimum quarterly fee awarded by the district court. Thus, the question whether Debtors are required to pay any post-confirmation quarterly fees because their reorganization plan was confirmed before the effective date of the 1996 amendments to S 1930(a)(6) is not before this court.
 
 
 [3]
 To date, no federal Court of Appeals has decided whether the term "disbursements" includes a reorganized debtor's post-confirmation payments. However, three district courts have reached the same conclusion as we reach today. See In re Maruko, 219 B.R. 567, 572 (S.D. Cal. 1998); In re Postconfirmation Fees, 224 B.R. 793, 797-99 (E.D. Wash. 1998); In re Boulders on the River, Inc., 218 B.R. 528, 541 (D. Or. 1997).
 
 
 [4]
 In the briefs submitted on appeal, the parties agreed that the postconfirmation period should be considered terminated on the date that the bankruptcy court would have, but for the U.S. Trustee's appeal, granted Debtors' motion for final decree.