In re Etsuko TSURUKAWA, fdba High Innovation, Debtor.

Etsuko Tsurukawa, fdba High Innovation, Appellant,

v.

Nikon Precision, Inc., Appellee.

BAP No. NC–00–1016–RyPR.
Bankruptcy No. 98–34249.
Adversary No. 98–3501–TC.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 2000.

Decided Jan. 22, 2001.

John Chu, Sawamura, Nishimi & Chu, San Francisco, CA, for Etsuko Tsurukawa, appellant.

Gary M. Kaplan, Howard, Rice, Nemerovski, Canady, Falk & Rabin, San Francisco, CA, for Nikon Precision, Inc., appellee.

Before: RYAN, PERRIS, and RUSSELL, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After Etsuko Tsurukawa ("Debtor") filed a chapter 7[1] petition, Nikon Precision, Inc. ("Nikon") filed a complaint to determine dischargeability of debt under §§ 523(a)(2)(A), (a)(4), and (a)(6) (the "Complaint"). After a trial, a judgment was entered holding the debt nondis-chargeable under § 523(a) (the "Judgment"), and Debtor timely appealed.

We REVERSE and REMAND.

## I. FACTS

Debtor was born and raised in San Francisco, California. In 1980, after taking some classes at a local community college, Debtor went to Japan for a six-month temporary assignment as a minister's aide with her church. After returning to the United States, Debtor worked as a bank teller at Sumitomo Bank. In 1981, Debtor married Takehiko Tsurukawa,[2] whom she had met in 1979 through their church. A year later, Debtor left her position at the bank. From 1982 through 1997,[3] Debtor was a homemaker and mother to three children, one of whom was autistic. She spent the majority of her time during this period caring for their children.

From early 1984 to March 1997, Takehiko was employed at Nikon. Nikon sells and services semiconductor manufacturing equipment. Takehiko's duties at Nikon "focused on material control, including the repair and refurbishing of parts removed from customers' equipment during servicing, or otherwise requiring repair." Complaint to Determine Dischargeability of Debt (Dec. 29, 1998), at 2. After these parts were repaired, Nikon either reinstalled them into its customers' equipment or held them in inventory to be sold as refurbished parts.

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. Takehiko was born and raised in Japan. In 1974, Takehiko came to the United States as a student. In 1974, he studied for six months at a vocational school in San Francisco. From 1975 to 1979, he took classes at a university in San Francisco. However, he never earned a degree. From 1974 to 1980, he worked part-time at a radio station, where his duties included equipment maintenance and program editing. From 1980 to 1981, he worked part time at an audio/visual retailer, where his duties included customer service, retail sales, and technical support.

3. In January 1989, Debtor suffered a head injury from a fall and received treatment from a neurologist for two years. Also in 1989, Debtor underwent gynecological surgery and was diagnosed with uterine fibroid tumors. In Fall 1989, Debtor began experiencing dizziness and debilitating pain. Debtor was subsequently diagnosed with having agoraphobia, which is a fear of leaving the home. In addition to caring for Debtor, Takehiko cared for their children and ran all the household errands. From 1990 to 1991, Debtor was treated for anxiety disorders with antidepressants. As a result of her treatment, Debtor's condition improved and she was able to leave her house for short periods of time. However, Debtor still suffers from agoraphobia and anxiety attacks.

Takehiko arranged for these parts to be repaired off-site. He determined whether the parts should be repaired and selected the repair facility. After obtaining cost estimates to repair the parts, Takehiko submitted purchase requisition forms to Nikon's purchasing department, identifying the parts needing repairs, the estimated costs for the repairs, and the names of the vendors that would provide the services.

In early 1991, Takehiko asked Debtor to register a business under her name. He claimed that he was unable to do it because at the time he was not a permanent resident of the United States. In May 1991, Debtor executed and submitted an application for a fictitious business statement for High Innovation (the "Fictitious Business Statement"). On the application for the Fictitious Business Statement, she represented that she was the sole owner of High Innovation and listed its mailing address as 1765 Buchanan Street in San Francisco, California (the "Buchanan Property"). High Innovation, however, never conducted business at this address. Rather, a business named Japan Trading Company was located at the Buchanan Property and operated by Debtor's parents. Instead, Debtor leased real property located at 2636 Judah Street in San Francisco to conduct High Innovation's business. Also in 1991, Debtor opened a bank account for High Innovation at Bank of America (the "Account") and listed herself as the sole signatory on the Account. Debtor listed on the Account the Buchanan Property as High Innovation's business address. Debtor signed

> dozens of checks on the ... Account on behalf of High Innovation, in an aggregate amount of several hundred thousand dollars, including (a) numerous checks payable to herself in an aggregate amount of tens of thousand of dollars[,] (b) numerous checks payable to or for the benefit of ... [Debtor's] parents

in an aggregate amount of thousands of dollars[,] and (c) numerous checks to trade creditors of High Innovation in an aggregate amount of thousands of dollars.

Stipulation Regarding Undisputed Facts, at 3. Additionally, Debtor deposited numerous checks in the Account on behalf of High Innovation, including at least several checks payable by Nikon. In January 1992, Debtor added Takehiko as an authorized signatory on the Account.

At some point in 1991, Takehiko began directing Nikon's repair work to High Innovation. He represented to Nikon that High Innovation was a reputable company capable of performing repair work on Nikon's parts. However, High Innovation did not perform the majority of the repair work. Instead, Takehiko sent the parts to third parties and billed Nikon for the repairs at prices significantly in excess of the actual costs of the repairs. Additionally, at no time did Takehiko or Debtor disclose to Nikon that Debtor was the registered owner of High Innovation or that Takehiko had a financial interest in High Innovation.

Debtor did not participate in the core operations of the business or have any decision-making authority in the business. Debtor did not have any business contact with Nikon.

In January 1997, Nikon discovered the scheme and fired Takehiko. On March 12, 1997, Nikon filed a complaint in state court against the Tsurukawas for (1) money had and received, (2) breach of agency duty, (3) fraud and deceit, (4) accounting, (5) constructive trust, (6) conversion, and (7) misappropriation of trade secrets (the "State Complaint"). On January 16, 1998, a stipulated judgment was entered in favor of Nikon and against the Tsurukawas for $2,000,000 on Nikon's claims for (1) fraud and deceit, (2) conversion, and (3) misappropriation of trade secrets (the "Stipulated Judgment").[4]

---

4. In August 1998, the Tsurukawas filed a motion in state court for an order setting aside

the Stipulated Judgment contending that they signed it under duress and threat of criminal

On September 24, 1998, Debtor filed a chapter 7 petition. On December 29, 1998, Nikon filed the Complaint. On June 25, 1999, Nikon filed a motion for summary judgment (the "Motion"). After a hearing on the Motion, an order was entered (1) granting the Motion as to Takehiko and (2) denying the Motion as to Debtor.[5] The bankruptcy court denied the Motion as to Debtor because "the state court stipulation of facts was ambiguous regarding ... [Debtor's] role in ... [the] scheme to defraud ... [Nikon]."[6] Tr. of Proceedings (Dec. 13, 1999), at 2. The sole issue left for trial was "whether ... [Debtor's] participation in the scheme was sufficient to justify attribution of her husband's wrongful conduct to her." *Id.*

After a trial, in holding the Stipulated Judgment nondischargeable, the bankruptcy court stated that

the wrongful acts of a spouse can be attributed to the debtor at least where the following facts are established: (1) the debtor participates significantly in the operation of the business; (2) the wrongful conduct of the spouse occurs in the ordinary course of the operation of that business; (3) the debtor has reason to suspect that the spouse is engaged in wrongful activity; (4) the debtor enjoys benefits from the wrongful activity; and (5) no unusual circumstances make it unjust to attribute the wrongful conduct of the spouse to the debtor.

prosecution against Takehiko. In September 1998, the state court denied this motion. Debtor does not dispute that the Stipulated Judgment is final.

5. On February 10, 1999, Takehiko filed a chapter 7 petition. On April 30, 1999, Nikon filed a complaint against him in bankruptcy court to determine dischargeability of the Stipulated Judgment. On June 30, 1999, an order was entered granting a motion by Nikon to consolidate its adversary proceedings against (1) Debtor and (2) Takehiko for all purposes.

6. Appellee did not appeal the order denying the Motion as to Debtor.

Tr. of Proceedings (Dec. 13, 1999), at 3–4. On December 20, 1999, the Judgment was entered.[7] Debtor timely appealed.

## II. ISSUE

Whether the wrongful conduct of one spouse can be attributed to the other spouse for purposes of nondischargeability of debt under § 523(a).

## III. STANDARD OF REVIEW

■ We review de novo whether a particular type of debt is nondischargeable under § 523(a)(2)(A). *See Japra v. Apte (In re Apte)*, 180 B.R. 223, 227 (9th Cir. BAP 1995), *aff'd*, 96 F.3d 1319 (9th Cir. 1996).

■ Additionally, we review de novo whether a particular type of debt is nondischargeable as a willful and malicious injury under § 523(a)(6). *See Petralia v. Jercich (In re Jercich)*, 243 B.R. 747, 751 (9th Cir. BAP 2000). After the bankruptcy court determines that the debt stems from an intentional tort, its determination of the malicious nature of the tort is reviewed for clear error. *See Gee v. Hammond (In re Gee)*, 173 B.R. 189, 192 (9th Cir. BAP 1994).

■ Lastly, we review the bankruptcy court's interpretation of the Code de novo. *See United States Trustee v. Celebrity Home Entm't Inc. (In re Celebrity Home Entm't Inc.)*, 210 F.3d 995, 997 (9th Cir. 2000).

7. The Complaint contained causes of action under §§ 523(a)(2)(A), (a)(4), and (a)(6). However, the Judgment indicates only that the Stipulated Judgment is nondischargeable under § 523(a). Based on a review of the Record, we determine that the Judgment arguably only supports dischargeability under § 523(a)(2)(A) and (a)(6). The bankruptcy court did not find that the Tsurukawas were partners in connection with the High Innovation business. Appellee did not cross-appeal the partnership issue. Thus, there is no support for a § 523(a)(4) claim. At oral argument, Appellee did not dispute that the Judgment did not encompass § 523(a)(4).

## IV. DISCUSSION

*The Wrongful Conduct of One Spouse Cannot Be Attributed to the Other Spouse for Purposes of Nondischargeability of Debt Under § 523(a).*

The relevant and material facts in this case are undisputed. The question that must be answered is whether the wrongful conduct of one spouse can be attributed to the other spouse for purposes of nondischargeability of debt under § 523(a). The answer to this question is not clear in the Ninth Circuit. The bankruptcy court held that the Stipulated Judgment was nondischargeable because it found that (1) Debtor participated significantly in the operations of High Innovation, (2) Takehiko's wrongful conduct occurred in the ordinary course of High Innovation's business, (3) Debtor had reason to suspect that Takehiko was engaged in wrongful conduct against Nikon, (4) Debtor enjoyed benefits from Takehiko's wrongful conduct, and (5) Debtor had no highly unusual pressures that excused her conduct under the circumstances. On appeal, Debtor contends that the bankruptcy court erred in holding the Stipulated Judgment nondischargeable against her without a factual finding that she knowingly participated in Takehiko's wrongful conduct. We agree.

Section 523(a)(2)(A) provides that a debtor is not entitled to a discharge of debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Consistent with effectuating the underlying purposes of the Code, exceptions to discharge under § 523 are narrowly con-strued. *See Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.1992).

The Supreme Court has made it very clear that statutory interpretation begins with the language of the statute and if the meaning of that language is clear on its face, that generally ends the inquiry. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Ent.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Here, the statutes do not indicate by their plain language whether for purposes of nondischargeability one spouse's wrongful conduct can be attributed to the other spouse.

In *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1877), the Supreme Court interpreted fraud to be actual or positive fraud and not fraud implied in law. *Id.* at 709. The Court held that a debtor's debt incurred through constructive fraud was not a debt "created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary capacity." *Id.* In *Neal*, an executor committed unlawful acts by selling two notes to an innocent purchaser who subsequently filed for bankruptcy. Although the debtor was guilty of constructive fraud, the Court held that because the debt asserted against the debtor had not been created by his own fraud, he was entitled to a discharge of that debt. *Id.*

Eight years later, however, in *Strang v. Bradner*, 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885), the Supreme Court imputed fraud committed by one partner to other partners. *Id.* at 560–561, 5 S.Ct. 1038. Unlike the facts in *Neal*, in *Strang*, the debtors and the wrongdoer were partners. The Court held that because there was a partnership relationship and because the wrongdoing involved a partnership transaction, the wrongdoing of a partner

was imputed to the innocent debtor partners. The court reasoned that

> [e]ach partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge. This is especially so when, as in the case before us, the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business.

*Id.* at 561, 5 S.Ct. 1038 (citations omitted).

In the legislative discussion of § 523(a)(2)(A) in the Bankruptcy Reform Act of 1978, Congress addressed and cited with approval the holding in *Neal* that for purposes of nondischargeability, fraud had to be actual or positive and not implied in law. *See* 124 Cong.Rec. H11095–96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978) (statements of Rep. Edwards and Sen. DeConcini). Congress therefore implicitly rejected the attribution of one party's wrongful conduct to a debtor when determining dischargeability under § 523(a)(2)(A).

As discussed below, various courts have relied on *Strang* to impute the wrongful conduct of one party to a debtor for purposes of nondischargeability. However, these cases are distinguishable from the appeal before us because they primarily deal with partners.

In *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556 (6th Cir.1992), the court, in citing *Strang*, held that the wrongful acts of a partner were imputed to an innocent partner for purposes of § 523(a)(2)(A) when (1) the debtor was a partner, (2) the debtor's partner committed fraud while acting on behalf of the partnership in the ordinary course of business, and (3) the debtor/partner reaped the monetary benefits of the unlawful conduct. *Id.* at 1561.

The Fifth Circuit reached a similar conclusion in *Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277 (5th Cir.1992) (per curiam). In *Luce*, the court held that a debtor is liable for a debt incurred by the deception of another if the debtor benefitted monetarily from such deception. *Id.* at 1283. Although the parties were married, they were also partners. Indeed, the court viewed "the imputation issue as one about business partners" and stated that "[t]he concepts of law we employ do not turn on the nature of the marital relationship, but on the nature of the business relationship between the [business partners]." *Id.* at 1284 n. 10.

Clarifying *Luce*, the Fifth Circuit, in *Allison v. Roberts (In re Allison)*, 960 F.2d 481 (5th Cir.1992), refused to impute fraud to an innocent spouse. *Id.* at 486. The court held that a spouse was not liable for fraud committed by her husband because there was "no basis for applying the agency fraud theory." *Id.* In holding the innocent spouse/debtor's debt dischargeable, the court stated that § 523(a)(2)(A) requires fraud involving "moral turpitude or intentional wrong" and that no agency relationship or business connection was present between the spouses. *Id.*

In *Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440 (9th Cir.1986), a hotel owner filed a complaint for a determination of dischargeability of the debtor's debt for willful and malicious conduct. The Ninth Circuit held that the wrongdoing of a partner was imputed to an innocent partner for dischargeability purposes when the partner at the time of the wrongdoing acted on behalf of the partnership and in the ordinary course of business of the partnership. *Id.* at 1444.

In *La Trattoria, Inc. v. Lansford (In re Lansford)*, 822 F.2d 902 (9th Cir.1987), the Ninth Circuit refused to extend the holding in *Cecchini* to non-partner spouses. *Id.* at 904. The court noted that if it were "to rely on strict agency or partnership principles," it might have been forced to conclude that the innocent spouse was liable for her husband's wrongful conduct despite her knowledge of such conduct.[8] *Id.* at 904–05. The court further emphasized the Code's purpose of providing a fresh start to debtors. *Id.* at 905 (citing *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915)).

 As previously noted, the legislative history to § 523(a)(2)(A) requires that the debtor actually intend to defraud the creditor and that the debt arise as a result of the fraud. The cases that have attributed the wrongdoing of a party to a debtor have done so based on an agency theory. As shown, most of these cases arise in the partnership arena. Where no agency relationship exists, the courts have not generally imputed the wrongdoing of a nondebtor spouse to a debtor in holding a debt nondischargeable. *See e.g., Lansford*, 822 F.2d 904–05 (refusing to impute a nondischargeable debt to the debtor spouse without evidence of an agency relationship); *American Charter Fed. Sav. & Loan Ass'n v. Harris (In re Harris)*, 107 B.R. 210, 215 (Bankr.D.Neb.1989) (finding no evidence that wife acted as her husband's agent and holding husband's conduct non-imputable to wife based on marital relationship alone). Certainly, spouses can be partners in a business enterprise where agency principles apply. However, the marital status alone does not create an agency relationship. As noted, this was the situation in *Lansford* where the Ninth Circuit refused to impute a nondischargeable debt to the debtor spouse without evidence of an agency relationship. *See Lansford*, 822 F.2d at 904–05.

Here, the bankruptcy court made no finding that Debtor and Takehiko either were or were not partners in the business of High Innovation. Additionally, the bankruptcy court did not find that Debtor intended to defraud Nikon. At the hearing on the Motion, the court denied the Motion as to Debtor concluding that the evidence giving rise to the Stipulated Judgment did not establish conclusively that Debtor intended to defraud Nikon. The bankruptcy court, therefore, put that issue over for trial. After hearing the evidence, the bankruptcy court did not conclude that Debtor intended to defraud Nikon. Rather, the court imputed the wrongdoing of Takehiko to Debtor in holding the Stipulated Judgment nondischargeable as to Debtor. Based on the discussion above, we hold that a marital union alone, without a finding of a partnership or other agency relationship between spouses, cannot serve as a basis for imputing fraud from one spouse to the other.

Accordingly, the bankruptcy court erred in holding the Stipulated Judgment nondischargeable absent a finding that an agency relationship existed between Debtor and Takehiko or that Debtor had the requisite fraudulent intent.

## V. CONCLUSION

In sum, the bankruptcy court erred in holding the Stipulated Debt nondischargeable. We reverse and remand to the bankruptcy court for a determination as to whether (1) an agency relationship existed between Debtor and Takehiko or (2) Debtor had the requisite fraudulent intent to deceive Nikon.

REVERSED and REMANDED.

---

**8.** The Ninth Circuit nevertheless reversed our holding that the debtor wife was entitled to a discharge from debt because she did not participate in or ratify her debtor husband's misconduct. Instead, the Ninth Circuit held that the record below supported the trial court's holding of nondischargeability against the debtor wife based on her own fraudulent actions. *See Lansford*, 822 F.2d at 904–05.