FILED

JUL 27 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No.   CC-16-1001-KuFKi |
| | ) |
| ALBERT S. AN and LAURI I. AN, | ) Bk. No.   2:14-bk-25340-BB |
| | ) |
| Debtors. | ) Adv. No.   2:14-ap-01739-BB |
| _____ | ) |
| ALBERT S. AN; LAURI I. AN, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) **MEMORANDUM**[*] |
| | ) |
| IL YOON KWON; COASTAL ASSET | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on June 23, 2016
at Pasadena, California

Filed – July 27, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Chief Bankruptcy Judge, Presiding

_____

Appearances:    James Alexander Dumas, Jr. of Dumas & Associates
argued for appellants Albert and Lauri An; Ryan
Daniel O'Dea of Shulman Hodges & Bastian LLP
argued for appellees Il Yoon Kwon and Coastal
Asset Management, LLC.

_____

Before: KURTZ, FARIS and KIRSCHER, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Pursuant to 11 U.S.C. § 523(a)(6),[1] the bankruptcy court excepted from discharge – as a debt arising from a willful and malicious injury – a portion of the judgment debt chapter 7 debtor Albert An owes to Il Yoon Kwon and Coastal Asset Management, LLC. The bankruptcy court gave issue preclusive effect to the state court's findings and based thereon ruled that all of the elements were met for a nondischargeable debt under § 523(a)(6), except for those elements pertaining to An's state of mind. After trial delving into An's state of mind, the bankruptcy court found that An intended to injure Kwon and Coastal Asset Management and that An knew that such injury was substantially certain to occur.

On appeal, An has not challenged the bankruptcy court's application of issue preclusion. Instead, An contends that the bankruptcy court incorrectly excepted the debt from discharge because it arose from a simple breach of lease and not from any tortious conduct. An further contends that the bankruptcy court incorrectly applied the legal standard for determining willfulness and also incorrectly found willfulness. None of An's contentions have any merit.

The bankruptcy court also excepted from discharge the same debt as against An's wife, Lauri. It is unclear how the bankruptcy court reached this result. Neither the state court

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

nor the bankruptcy court made any findings that Lauri actively participated in An's nondischargeable conduct or that she had the requisite state of mind for nondischargeability under § 523(a)(6), and the record on appeal does not support the nondischargeability judgment entered against her. In fact, at oral argument, Kwon and Coastal Asset Management admitted that the nondischargeability judgment against Lauri was "incorrect."

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

**FACTS**

The underlying dispute concerns a medical office building in Los Angeles, California. At the time Kwon and An met in 2001, An was renting the building from a third party under a lease. An's business ventures were not generating sufficient revenue to pay all of his bills, including his rent. Over time, Kwon lent An, in aggregate, roughly $1 million in order to help An pay his expenses.

Kwon later became concerned that An could not pay his rent and might be evicted from the office building, which in turn would prevent An from generating further revenue and would jeopardize Kwon's ability to recover the money he lent An. Therefore, in June 2002, Kwon decided to purchase the office building. Kwon paid $3.15 million for the building and took title in his own name as his sole and separate property.

At the time of Kwon's purchase, Kwon succeeded the prior owner as the landlord under the prior owner's 2000 master lease of the building to An. Even so, An never paid any rent to Kwon. This state of affairs remained essentially unchanged until August 2005. By that time, Kwon had transferred title to the office

3

building to his wholly-owned limited liability company Coastal Asset Management, LLC.[2] Also at that time, Kwon filed an unlawful detainer action against the Ans. In response, the Ans filed a verified answer, in which they asserted that they were not Kwon's tenants, they did not owe him any rent, and they became co-owners of the office building at the time Kwon acquired title to the building.

The state court entered judgment after trial denying Kwon any relief on his unlawful detainer complaint, apparently holding that the issue of ownership prevented the court from granting Kwon relief in a summary unlawful detainer proceeding.

At the time of commencement of the unlawful detainer proceeding, the Ans already had filed their first chapter 7 bankruptcy case, but Kwon did not learn of the bankruptcy case until sometime in early 2006, about the same time the 2005 bankruptcy case was closed.

An also filed in 2005, in the state court, a quiet title action seeking to establish his asserted 50% interest in the office building. An claimed that he had an oral agreement with Kwon that, in effect, entitled An to a 50% interest in the office building, even though An signed multiple documents around the

---

[2]In the subsequent state court litigation over possession of the building, both Kwon and Coastal Asset Management were parties to the litigation as the former and current owner of the building. Both also filed the nondischargeability complaint against the Ans in their current bankruptcy case. Nonetheless, for purposes of this appeal, there is no material distinction in position between Kwon and Coastal Asset Management, so for ease of reference, we hereafter refer to them both simply by Kwon's name.

4

time of purchase stating that he had no interest in the building.

In response to An's quiet title action, Kwon filed a cross-complaint against An, his medical corporation Woori Medical Center Corp., and his spouse Lauri for, among other things, possession and damages based on their alleged wrongful possession of the office building. The state court litigation was subject to years of delay, which the state court generally attributed to An. Eventually, a bench trial took place, after which the state court ruled in favor of Kwon. According to the state court, An's testimony generally lacked credibility. More specifically, the state court found that An's contention of an oral agreement providing for co-ownership of the office building was false. In support of this finding, the state court pointed out that An's testimony regarding co-ownership "wildly conflicts" with An's prior testimony and sworn statements, including those made in his 2005 bankruptcy case that he did not own any real property. The state court also pointed out that An's co-ownership claim was "directly contradicted" by several written agreements he signed at the time of Kwon's purchase of the building and that An failed to explain why there were no writings of any kind supporting An's ownership claim. The state court further noted that the testimony of An's wife Lauri, An's bankruptcy attorney, the seller of the building, and the real estate broker who handled the sale, all were at odds with An's testimony regarding co-ownership.

Notably, virtually none of the state court's findings shed any light on the conduct of Lauri. Only one paragraph of the state court's fifteen-page statement of decision is devoted to

5

her. In it, the court recounts Lauri's testimony regarding her knowledge of An's co-ownership claim at the time of the Ans' 2005 bankruptcy filing. According to Lauri, An never mentioned at that time that he believed he owned half of the office building and she did not know this is what he believed. Lauri further testified that she believed their initial 2005 bankruptcy schedules were correct when she signed them – that they correctly reflected that the Ans owned no real property. The only other information this paragraph reveals about Lauri is that she was not working at the time of the 2005 bankruptcy filing.

In September 2010, the state court entered judgment in favor of Kwon. In relevant part, the judgment included a $1.6 million damages award on Kwon's ejectment cause of action against the Ans and Woori, jointly and severally.

In August 2014, the Ans filed their current chapter 7 bankruptcy case, and in November 2014, Kwon filed his nondischargeability complaint against the Ans. The complaint contained a single claim for relief under § 523(a)(6). Kwon alleged that the state court's $1.6 million award of damages on his ejectment cause of action was nondischargeable as a willful and malicious injury.

Relying on the state court's judgment and statement of decision, Kwon filed a summary judgment motion. The bankruptcy court granted that motion with one exception. According to the court, a trial was necessary on the issue of An's state of mind. On the other hand, the bankruptcy court held that, as to all other issues essential to determining the nondischargeability of the ejectment damages award under § 523(a)(6), the Ans were

barred from revisiting those issues based on the doctrine of issue preclusion.

While the court concluded that trial was necessary on An's state of mind, the court's summary judgment order, on its face, granted summary judgment as to Lauri's state of mind, even though there was virtually nothing in the record from which the bankruptcy court could have determined that her state of mind satisfied the requirements for a willful and malicious injury under § 523(a)(6). In fact, there was virtually nothing in the summary judgment record from which the bankruptcy court could have inferred that Lauri actively participated in the conduct from which Kwon's nondischargeability claim arose.

In fairness to the bankruptcy court, the Ans' summary judgment opposition did nothing to point out the absence of evidence regarding Lauri specifically; however, there was one statement in their summary judgment papers in which the Ans pointed out that there was nothing in the state court judgment or statement of decision from which the bankruptcy court could conclude, on summary judgment, that either of the Ans had acted willfully or maliciously. At the hearing on the summary judgment motion, counsel for the Ans followed up on this point by stating as follows:

> And by the way, Your Honor, I also have a problem as to the spouse because there is nothing -- they have no communication with the spouse. I know they've named their -- on everything but there's never been any communication between the plaintiff and the debtor, Ms. An.

Hr'g Tr. (Aug. 25, 2015) at 30:21-31:1.

After a trial at which An and Kwon both testified, the

7

bankruptcy court ruled from the bench that most of the ejectment damages award would be excepted from discharge against both An and Lauri. After pointing out that there was no disagreement amongst the parties and the court regarding the applicable legal standard for a willful and malicious injury under § 523(a)(6), the bankruptcy court specifically found, based on the testimony at trial and based on the state court's findings, that An did not really believe that he had an oral agreement with Kwon entitling him to a 50% interest in the office building; rather, An asserted his spurious ownership claim simply as a means to retain possession during eight years of state court litigation knowing that he had no right to possession and knowing that his wrongful possession would injure Kwon. From these facts, the court further found that An intended to injure Kwon and that he knew that such harm would occur. The bankruptcy court, therefore, concluded that An's conduct was willful, malicious and knowing within the meaning of § 523(a)(6).

The bankruptcy court made no findings regarding Lauri's conduct or her state of mind.

After the filing of a declaration by Kwon's counsel backing out from the ejectment damages award the amount that was discharged as a result of the Ans' 2005 bankruptcy case, the bankruptcy court entered judgment against the Ans on December 22, 2015, declaring the remaining amount of the ejectment damages award nondischargeable. The Ans timely appealed from the nondischargeability judgment.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

8

§§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.   Did the bankruptcy court err when it excepted from An's discharge the ejectment damages award?

2.   Did the bankruptcy court err when it excepted from Lauri's discharge the ejectment damages award?

## STANDARDS OF REVIEW

The issues raised in this appeal require us to review both the bankruptcy court's summary judgment ruling, as well as the bankruptcy court's judgment after trial. We review the summary judgment ruling ne novo. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008).

As for the judgment after trial, we review the bankruptcy court's legal conclusions de novo and its findings of fact under the clearly erroneous standard. Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002).

The bankruptcy court's factual findings were clearly erroneous only if they were "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir.2009) (en banc)).

## DISCUSSION

Section 523(a)(6) excepts from discharge debts arising from willful and malicious injuries. For purposes of this appeal, the legal standards governing this nondischargeability provision are well established and not in dispute. See In re Barboza, 545 F.3d at 706; In re Su, 290 F.3d at 1144-46. Therefore, we will focus

9

instead on the Ans' arguments on appeal.

Without citing any California authority, the Ans claim that Kwon's ejectment cause of action sounded in contract rather than tort. Therefore, the Ans reason, because the source of Kwon's injury was contractual rather than tortious, the bankruptcy court should not have declared nondischargeable under § 523(a)(6) the ejectment damages award.

It is true that a simple breach of contract cannot give rise, by itself, to a nondischargeable debt. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1205 (9th Cir. 2001). On the other hand, when the debtor engages in willful tortious conduct that injures the creditor, the existence of a current or former contractual relationship between the parties does not render § 523(a)(6) inapplicable. Id. at 1205-06. As Jercich explained, § 523(a)(6) can apply when a breach of contract is accompanied by willful tortious conduct. Id.

We look at applicable non-bankruptcy law to determine whether particular conduct is tortious. Id. at 1206. Under California law, all individuals have a general (non-contractual) duty not to interfere with another's right to possession of real property. Rickley v. Goodfriend, 212 Cal. App. 4th 1136, 1152-55 (2013) (citing Burtscher v. Burtscher 26 Cal. App. 4th 720, 727 (1994)). An's wrongful interference with Kwon's right to possession of the office building violated this general duty and thus was tortious under California law. See id. Kwon's ejectment action was aimed at remedying An's violation of this general duty and thus sounds in tort. See Haggin v. Kelly, 136 Cal. 481, 483 (1902) (citing Payne & Dewey v. Treadwell,

10

16 Cal. 220, 244-45 (1860)) (explaining that ejectment cause of action arises when a defendant possesses real property and wrongfully withholds possession of it from the owner of the property).  Moreover, the California cases cited by Kwon identify ejectment actions as tort actions rather than as contract actions.  See, e.g., B & B Sulphur Co. v. Kelley, 61 Cal. App. 2d 3, 6 (1943); Zettle v. Gillmeister, 64 Cal. App. 669, 671 (1923).  In contrast, the Ans have not cited any California cases identifying ejectment causes of action as sounding in contract.

Instead, the Ans rely on the fact that the bankruptcy court declared nondischargeable the portion of the state court's judgment for "unpaid rent."  In essence, the Ans contend that, because the state court judgment referred to "rent" as the type of damages awarded on account of the ejectment cause of action, the state court's "rent" award must have been based on or arose from the lease – a contractual relationship.  The record does not support the Ans' contention.  While the state court does refer to the ejectment damages award as "past due rent" and "holdover rent," other parts of the state court's decision make clear that the ejectment damages award was based on the property's **reasonable rental value**, which is the appropriate measure for an ejectment damages award for wrongfully withholding possession of real property.  As stated in one leading treatise on California real property law:  "The measure of damages in an action for ejectment . . . is the value of the use of the property, which is measured by the greater of either the reasonable rental value of the property . . . or the benefits obtained by the person wrongfully occupying the property."  Harry D. Miller & Marvin B.

11

Starr, 10 Cal. Real Estate § 34:226 (4th ed. 2015).

Furthermore, Kwon terminated the lease no later than August 2005. Thus, the ejectment damages accruing after that date were not calculated based on the accrual of rent under the lease, and the references to "rent" in the state court judgment and decision and in the bankruptcy court's judgment did not render the state court's ejectment damages award a dischargeable contract claim.

An further challenges the bankruptcy court's determination that An's conduct was willful within the meaning of § 523(a)(6). An's argument is twofold. An first contends that the bankruptcy court did not apply the correct legal standard for determining willfulness, and An also contends that the bankruptcy court's finding of willfulness was clearly erroneous. We are perplexed by An's argument regarding the willfulness legal standard. The parties and the bankruptcy court all were in agreement that the willfulness element is satisfied if the debtor subjectively intended to injure the creditor or subjectively knew that injury to the creditor was substantially certain to occur. In re Su, 290 F.3d at 1142–43. The bankruptcy court correctly referred to this standard and concluded that it needed to hold trial on An's state of mind to ensure that the standard was met.

As for the bankruptcy court's finding of willfulness, the bankruptcy court was presented with sufficient evidence from which it could infer that An intended to injure Kwon and that An knew Kwon would suffer injury as a result of An's wrongful possession of the office building.

Nor is there anything illogical or implausible concerning the bankruptcy court's willfulness finding. An complains that

12

the bankruptcy should have found that An subjectively believed that he had a right to possession of the office building based on his claim of a 50% ownership interest in the office building, but the bankruptcy court found otherwise. It found that An did not really believe that he was entitled to 50% ownership of the office building, but rather pretended to believe in this ownership claim in order to wrongfully keep possession of the office building for as long as possible, all to Kwon's detriment. We hold that the bankruptcy court's finding regarding An's subjective state of mind was a reasonable inference drawn from the evidence presented to the bankruptcy court at the time of the trial.

An also identified as an issue on appeal the bankruptcy court's determination that An acted maliciously within the meaning of § 523(a)(6). But his opening appeal brief does not contain any argument specifically and distinctly challenging this determination. Consequently, An has forfeited this argument on appeal. See Clark v. Arnold, 769 F.3d 711, 731 (9th Cir. 2014) (citing Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994)). Even if we were to address this issue, nothing in the record establishes any error in the bankruptcy court's determination that An's conduct was malicious. There was no controversy between the parties or the court regarding the correct legal standard. While the court did not specifically recite the elements of a malicious injury within the meaning of § 523(a)(6), all of the parties' trial briefs recited the correct legal standard.

Under the correct standard, conduct is considered malicious

13

for purposes of § 523(a)(6) if it is: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." In re Jercich, 238 F.3d at 1209.

Here, the bankruptcy court did not make a specific finding as to each of the four maliciousness elements, but the record nonetheless supports the bankruptcy court's maliciousness determination. The state court judgment and statement of decision established that An intentionally deprived Kwon of possession of the office building and that this deprivation was wrongful because An had no right or entitlement to possession. In addition, our discussion, above, regarding the tortious nature of an ejectment action under California law further establishes the wrongfulness of An's conduct and that such conduct necessarily caused injury to Kwon as the owner of the real property who was entitled to possession. Finally, there is nothing in the record in any way suggesting that An had any just cause or excuse for fabricating a spurious ownership claim – a claim he really did not believe existed – in order to continue as long as possible his wrongful possession of the office building. See generally Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1106-07 (9th Cir. 2005) (explaining nature of just cause or excuse element).

There is only one other issue we need to address: the bankruptcy court's exception to discharge against An's wife Lauri. We cannot ascertain from either the court's ruling or the record how the court reached this result. If, as the bankruptcy court held, the state court's findings were insufficient by

14

themselves to conclusively determine An's state of mind for nondischargeability purposes, how could they have been sufficient to determine Lauri's state of mind? Moreover, there were virtually no allegations, evidence or findings, either in the bankruptcy court or in the state court, suggesting that Lauri actively participated in An's misconduct.

These incongruities perhaps suggest that the bankruptcy court imputed An's nondischargeable conduct to Lauri. But if that is what the bankruptcy court had in mind, the record does not support the bankruptcy court's decision. There were no allegations, evidence or findings that An was Lauri's business partner or agent. And the mere fact that Lauri was An's spouse, by itself, would be insufficient to support the nondischargeability judgment against her. See Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 258 B.R. 192, 198 (9th Cir. BAP 2001); accord Sachan v. Huh (In re Huh), 506 B.R. 257, 269-71 (9th Cir. BAP 2014) (en banc). When, as here, there are no allegations, evidence or findings that the debtor participated in the spouse's nondischargeable conduct or that a partnership or principal-agent relationship existed between the spouses, the bankruptcy court commits reversible error by imputing the nondischargeable conduct to the debtor. Id. at 270 (citing In re Tsurukawa, 258 B.R. at 198).

In re Huh further suggests an additional requirement. Based on In re Huh, in order to impute An's nondischargeable conduct to Lauri, Kwon would have needed to establish that Lauri knew or should have known of the wrongful nature of An's conduct. See id. at 265-68, 71 (citing Walker v. Citizens State Bank

15

(In re Walker), 726 F.2d 452 (8th Cir. 1984)).  The bankruptcy court made no findings regarding Lauri's knowledge, nor was there evidence in the record from which the court reasonably could have inferred what Lauri knew or should have known regarding An's wrongful conduct.

At oral argument, Kwon's counsel asserted that the nondischargeability judgment against Lauri was the result of a "typographical" error on his part.  This assertion implies that the entry of the judgment against Lauri was inadvertent, but the record demonstrates that Kwon affirmatively requested relief against Lauri in his summary judgment motion and provided for relief against her in his draft proposed final judgment, which the bankruptcy court adopted as drafted.  This conduct seems intentional rather than inadvertent.

Regardless, because the nondischargeability judgment was not supported by any allegations, evidence or findings pertaining to Lauri, we must VACATE AND REMAND the bankruptcy court's ruling to the extent it determined that the ejectment damages award was nondischargeable against Lauri.[3]

## CONCLUSION

For the reasons set forth above, we AFFIRM the exception to discharge against An, VACATE the exception to discharge against Lauri, and we REMAND for further proceedings consistent with this decision.

---

[3]In light of our analysis and resolution of this appeal, it is unnecessary for us to address the Ans' argument that the state court's findings would not have been sufficient to support a malicious prosecution cause of action against them under California law.

16