**In re Etsuko TSURUKAWA, fdba High Innovation, Debtor.**

**Etsuko Tsurukawa, fdba High Innovation, Appellant,**

**v.**

**Nikon Precision, Inc., Appellee.**

BAP No. NC–02–1077–MaRyK.
Bankruptcy No. 98–34249.
Adversary No. 98–3501.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 23, 2002.

Filed Dec. 12, 2002.

John Chu, Corporate Counsel Law Group, LLP, San Francisco, CA, for Etsuko Tsurukawa.

Gary M. Kaplan, Howard, Rice, Nemerovski, Canady, Falk & Rabin, San Francisco, CA, for Nikon Precision, Inc.

Before MARLAR, RYAN and KLEIN, Bankruptcy Judges.

### OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

In a prior appeal between these parties, we addressed the nondischargeability of a $2 million stipulated judgment debt, pursuant to § 523(a)(2)(A),[1] based on the vi-

---

[1] Unless otherwise indicated, section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

The last appeal also involved § 523(a)(6) (willful and malicious injury), but the judg-

ment on remand was expressly entered only under § 523(a)(2), and the parties have not raised a separate issue concerning § 523(a)(6).

carious liability of Etsuko Tsurukawa ("Debtor") for her husband's fraud. In *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 258 B.R. 192 (9th Cir. BAP 2001) ("*Tsurukawa I*"), we held that "a marital union alone, without a finding of a partnership or other agency relationship between spouses, cannot serve as a basis for imputing fraud from one spouse to the other." *Id.* at 198. We only inferentially decided the converse, that a finding of an agency or partnership relationship would support nondischargeability. Thus, we reversed and remanded for appropriate factual findings, such as whether an agency relationship existed. *Id.*[2]

On remand, the bankruptcy court found the existence of a business partnership and agency relationship between Debtor and her fraudulent spouse. It therefore entered a judgment of nondischargeability against Debtor. We AFFIRM.

### FACTS AND PROCEEDINGS

The undisputed material facts were set forth in our prior opinion. In 1981, Debtor, an American citizen, married Takehiko Tsurukawa ("Takehiko"), a Japanese citizen, and they settled in San Francisco. Before her marriage, Debtor attended a local community college and worked as a bank teller at Sumitomo Bank.

Takehiko worked as an audio/visual retailer before being hired by Nikon Precision, Inc. ("Nikon") in 1984, a company which sells and services semiconductor and manufacturing equipment. Takehiko's job was to repair and refurbish parts removed from customers' equipment. Takehiko arranged for these parts to be repaired off-site, and then submitted purchase requisition forms to Nikon which identified the repairs, costs, and vendors. Takehiko never disclosed to Nikon during the time in question that one of the vendors he used was a company owned by Debtor known as High Innovation.

In 1991, Takehiko had asked Debtor to execute a fictitious business name statement for High Innovation,[3] and she complied. Debtor opened a bank account for High Innovation at Bank of America and listed herself as the sole signatory, and also applied for a business credit card. Debtor also leased real estate from which to conduct the business, but listed the address as that of another location, which

---

**2.** Ordinarily, resolution of a legal issue is "law of the case." *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997) (stating that the law of the case doctrine generally precludes reconsideration of an issue that has already been decided by the same court).

However, the *Tsurukawa I* panel was careful to note that the bankruptcy judge had not yet found that Debtor and her husband were business partners, or that a principal-agent relationship existed between them. *Tsurukawa I*, 258 B.R. at 198.

Then, *Tobin v. Sans Souci Ltd. P'ship (In re Tobin)*, 258 B.R. 199 (9th Cir. BAP 2001) was filed the same day as *Tsurukawa I*. That panel declined to affirm the application of vicarious liability to a debtor-shareholder on the basis of corporate alter ego, in the absence of evidence of the debtor's fraudulent intent. In dictum, it questioned the continuing authority of *Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440 (9th Cir. 1986) regarding the application of strict agency principles in nondischargeability proceedings. *Tobin*, 258 B.R. at 205–06.

Therefore, while recognizing the applicability of law of the case, we also address this issue in greater detail.

**3.** Debtor alleges, in her opening brief and without citation to the record, that Takehiko could not put the new business in his own name because of his immigration status. Appellant's Opening Brief (July 24, 2002), at 3. Debtor testified, however, that she did not know whether her husband needed a "green card" to open the business. Tr. of Proceedings (Dec. 7, 1999), at 30. Even after Takehiko obtained his "green card" in 1983, the fictitious business name statement was not amended.

was her parents' business address. Debtor filed tax returns, on which she was represented as the owner of High Innovation.

Sometime in 1991, Takehiko began directing most or all of Nikon's repair work to High Innovation. However, High Innovation did not do any of the work, but Takehiko instead sent the parts to third party vendors, and then overbilled Nikon. At no time did Debtor or Takehiko disclose to Nikon that Debtor was the registered owner of High Innovation or that Takehiko had a financial interest in it.

During the time High Innovation was in business, 1991–1997, Nikon was its only income source. Debtor wrote checks for High Innovation on its account, and deposited checks payable to High Innovation into the business bank account as well as into her personal bank account. She also used the business credit card for personal expenses for herself and her family members, including her parents, amounting to several hundreds of thousands of dollars. Income from Nikon reached millions of dollars, and Debtor and Takehiko used much of the money on personal consumption, such as buying two additional houses and new cars.

Notwithstanding that Debtor was the owner of High Innovation, and had signatory authority, she did not control or participate in the day-to-day operations of High Innovation. Debtor spent most of her time as a homemaker and mother to three children, one of whom was autistic. In addition, from 1989–1991, Debtor suffered physical and psychological problems, including a head injury from a fall, gynecological surgery, dizziness and debilitating pain, and received treatment for anxiety and agoraphobia. The latter condition was treated with antidepressant drugs.

When Nikon discovered the scheme, in January, 1997, it fired Takehiko, and filed a state court complaint against the Tsurukawas. In 1998, a $2 million stipulated judgment[4] was entered in Nikon's favor on its claims for (1) fraud and deceit, (2) conversion, and (3) misappropriation of trade secrets.

In 1998, Debtor filed a chapter 7 bankruptcy petition, and Nikon filed a complaint seeking to except the stipulated judgment from discharge.[5] In August 1999, the court ordered that the stipulated state court judgment was nondischargeable, but held over for trial the issue of Debtor's liability. Following a trial, in December 1999, the court then entered judgment finding Debtor liable based on her knowing participation in, and benefit from, the fraudulent business, but declining to find either fraudulent intent on Debtor's part or that she and Takehiko were business partners. *See Tsurukawa I*, 258 B.R. at 195, 198 (citing Tr. of Proceedings, (Dec. 13, 1999), at 3–4).

On appeal, we reversed and remanded, clarifying that the wrongful conduct of one spouse could not be attributed to the other spouse, for purposes of nondischargeability of debt under § 523(a), without either a showing of that spouse's actual fraud or by application of agency or partnership principles. *See Tsurukawa I*, 258 B.R. at 192. As to the latter, we further held that the marital relationship alone cannot create the necessary agency relationship, which must be a partnership or business enterprise between the spouses. *Id.* at 198.

---

4. It was undisputed that under California law this judgment was a community debt.

5. Takehiko also filed a chapter 7 petition, and Nikon's nondischargeability complaint in that case was consolidated with its complaint against Debtor.

On January 14, 2002, the bankruptcy court entered its memorandum decision and judgment after remand. Construing California partnership law, the court concluded that Debtor and Takehiko were business partners, inferring their intent to create such a relationship from their acts. The court further found the existence of a principal-agent relationship between Debtor, who held herself out to be the owner of High Innovation, and Takehiko, who acted as her agent in relation to Nikon. Debtor timely appealed.

### ISSUES

1. Whether the evidence supported the bankruptcy court's findings that a partnership and principal-agent relationship existed between Debtor and Takehiko.

2. Whether fraud may be imputed to a spouse under partnership/agency principles in a § 523(a)(2)(A) action.

### STANDARD OF REVIEW

We review the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir.1998). Issues of state law are reviewed under the *de novo* standard. *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1300 (9th Cir.1997).

Review under the clearly erroneous standard is deferential. Thus, we must accept the lower court's findings of fact unless we are "left with the definite and firm conviction that a mistake has been committed." *Smith v. Lachter (In re Smith)*, 242 B.R. 694, 700 (9th Cir. BAP 1999) (citing *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), and *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819 (9th Cir.1996)).

A factfinder's choice between two permissible views of the evidence cannot be clearly erroneous. *Duckett v. Godinez*, 109 F.3d 533, 535 (9th Cir.1997). If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.*, 104 F.3d 1137, 1141 (9th Cir. 1997) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

### DISCUSSION

Section 523(a)(2)(A) provides for nondischargeability of debts incurred through "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). This provision mirrors the concept of common law fraud, and requires a showing of: 1) misrepresentation of a material fact; 2) knowledge of the falsity of the representation; 3) intent to induce reliance; 4) justifiable reliance; and 5) damages. *Tobin*, 258 B.R. at 203.

The central issue is whether Takehiko's fraudulent intent can be imputed to Debtor. On remand, the bankruptcy court did not find fraudulent intent on the part of Debtor. Its ruling was based on findings of a business relationship between Debtor and Takehiko.

### A.

### A Partnership Was Formed and Agency Principles Were Applicable.

A partnership is "an association of two or more persons to carry on as co-owners a business for profit." Cal. Corp.

Code § 15006(1) (West 1977).[6] Whether or not parties have entered into a partnership relationship rather than some other form of relationship is a question of fact and depends on whether they intended to share in the profits, losses and the management and control of the enterprise. *See Bank of Cal. v. Connolly*, 36 Cal. App.3d 350, 364, 111 Cal.Rptr. 468, 477–78 (1973); *Nelson v. Abraham* 29 Cal.2d 745, 750, 177 P.2d 931, 933 (1947). Thus, co-ownership of any sort, as well as profit-sharing, are factors tending to establish partnership. *See Holmes v. Lerner*, 74 Cal.App.4th 442, 453–54, 88 Cal.Rptr.2d 130, 138 (1999) (applying former law and holding that sharing of profits is evidence of partnership, rather than a required element).

■■■■■ All partners are jointly and severally liable for "any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners . . . ." Cal. Corp.Code § 15013 (West 1977); *see also* Cal. Corp.Code §§ 15014, 15015 (West 1977). The law of agency applies to a partnership. Cal. Corp.Code § 15004 (West 1977).[7] "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Cal. Civ.Code § 2295 (West 1985). "Every partner is an agent of the partnership for the purpose of its business. . . ." Cal. Corp.Code § 15009

(West 1977 & Supp.1990). Each partner acts as principal for himself or herself and as agent for the copartners in the transaction of partnership business. *Tufts v. Mann*, 116 Cal.App. 170, 177, 2 P.2d 500, 503 (1931). In addition, "a general partner's liability is the same as that of a principal for the fraud of his agent while acting within the scope of his authority." *Pearson v. Norton*, 230 Cal.App.2d 1, 14–15, 40 Cal.Rptr. 634, 642 (1964) (finding partner-wife liable for partner-husband's fraud in sale of partnership property).

■■■ A primary characteristic of an agency relationship is the principal's right to control the agent's conduct regarding matters entrusted to the agent. *Alvarez v. Felker Mfg. Co.*, 230 Cal.App.2d 987, 999, 41 Cal.Rptr. 514, 521 (1964). Debtor contends that she and Takehiko were not business partners, and even if they were, that she was a mere "figurehead" without any control or awareness of the day-to-day operations of the business. Debtor maintained that she could not question or direct her husband's business affairs because she was "simply a homemaker and mother; it was not her station in life to delve into Takehiko's job or his business," and she "was *never* in any position to dictate what he could or could not do." Appellant's Opening Brief (July 24, 2002), at 13 (emphasis in original).

---

**6.** The applicable version of the Uniform Partnership Act is former Cal. Corp.Code §§ 15001–15045, because High Innovation was in business between 1991–1997, and Nikon's complaint was filed on December 28, 1998. The revised Uniform Partnership Act of 1994, Cal. Corp.Code §§ 16100–16962, governs all partnerships after January 1, 1999, or a partnership formed prior to that date which elected to be governed by the revised act, and there is no indication of such an election by High Innovation in the appellate record. *See* Cal. Corp.Code § 16111

(West Group 2002). In any event, the differences in the codes would not substantively alter this disposition.

**7.** This provision was repealed by the Uniform Partnership Act of 1994, effective January 1, 1999; however, agency law is incorporated into the revised act. *See, e.g.*, Cal. Corp.Code § 16301 ("Each partner is an agent of the partnership . . . ."); §§ 16306–16308 (discussing liability of partners for obligations of partnership and acts of other partners).

We initially disagree with the statement that Debtor was *"never* in any position" of control because her ownership status was, by definition, a position of control. By holding herself out as the owner of High Innovation, Debtor enabled Takehiko to carry out his fraudulent scheme against Nikon, to whom Takehiko did not disclose the ownership of High Innovation.[8] Moreover, a partnership can exist as long as the parties have the right to manage the business, *Moulin v. Der Zakarian*, 191 Cal.App.2d 184, 189, 12 Cal.Rptr. 572, 575 (1961), even though in practice one partner relinquishes the day-to-day management of the business to the other partner. *Singleton v. Fuller*, 118 Cal. App.2d 733, 740–41, 259 P.2d 687, 691 (1953).

The bankruptcy court concluded that agency law should apply to married partners the same way it would apply to unmarried partners:

> [I] would find an agency relationship between unmarried persons who had the same economic relationship as Etsuko and Takehiko. If A and B are unmarried, A holds herself out to the public as sole owner of a business, B conceived the business and makes all business decisions, A deposits and writes checks for the business, and A and B share the profits of the business, the most natural conclusion is that B manages A's business as A's agent, or that A and B are partners. Such are the facts here. Takehiko conceived the idea for the business and managed all aspects of the business. Etsuko performed numerous functions for the business, including signing the lease for the company's Judah Street premises, signing the forms used to open a company bank account at Bank of America for which she was originally the sole signatory, signing the application for a company credit card, writing many checks on the company account, depositing many checks payable to High Innovation, and handling some of the maintenance and repairs regarding the Judah Street premises. The evidence indicates that both Etsuko an Takehiko consented to perform the respective roles described above.

Memorandum Decision (Jan. 14, 2002), at 5–6 (footnote omitted).

The court also used caution in applying these principles to partners who are married, and stated:

> I recognize that one must be careful with this type of analysis. "The assumption of [business functions] by a spouse may not carry the weight that such conduct on the part of a stranger would imply ...." [citing *Pearson*, 230 Cal.App.2d at 12, 40 Cal.Rptr. 634]. Thus, it is not appropriate to find an agency relationship in every instance in which a spouse takes bare legal title to business property held for the benefit of the couple, or where one spouse performs minor services for a business run by the other spouse. It is also inappropriate to find a partnership in every instance in which spouses share the profits of an enterprise, because under community property law a husband and wife generally share the profits of a business managed by either spouse. This is not such a case. By holding herself out as sole owner of High Innovation and by performing substantial ac-

---

8. Debtor contends that Nikon could have ascertained the ownership of High Innovation if it had requested a copy of the company's fictitious business name statement. However, the "justifiable reliance" standard, under § 523(a)(2)(A), does not require such an investigation on the part of Nikon. *See Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

tivities for the business, Etsuko assumed an active role in High Innovation that goes beyond merely holding a community property interest in her husband's business and performing minor services for that business.

*Id.* at 6.

■ The court's conclusions reflect the requirement under California law that persons who reap the benefits of a partnership must also be subject to its liabilities. *See San Joaquin Light & Power Corp. v. Costaloupes,* 96 Cal.App. 322, 334, 274 P. 84, 89 (1929).

The bankruptcy court's findings that a partnership existed and that Takehiko acted as agent for High Innovation and Debtor are fully supported by the record, including the trial testimony. The evidence included undisputed facts, summarized as follows:

1. Debtor agreed to help Takehiko by forming High Innovation and to contribute the initial capital from her individual bank account. Debtor and Takehiko went together to apply for the business license.

2. Debtor executed and filed the fictitious business name statement, which listed herself as sole owner of High Innovation, and wrote a check for the publication of same.

3. Debtor knew that Nikon was her husband's employer and that High Innovation's revenues were entirely comprised of its business with Nikon.

4. Debtor listed the address for High Innovation as that of her parents' business, even though Debtor later leased commercial space at another location for High Innovation. High Innovation never conducted any business at the recorded address.

5. Debtor opened a bank account for High Innovation, and designated herself as sole signatory. She regularly balanced the account, and knew how much was in the account. In 1992, Debtor authorized Takehiko to sign checks as well, yet she continued to write checks.

6. Debtor wrote and signed hundreds of checks on the High Innovation bank account, including (a) checks payable to herself in an aggregate amount of more than $100,000; (b) checks for personal expenses exceeding $10,000; (c) thousands of dollars' worth of checks payable to or for the benefit of her parents; (d) and checks to trade creditors of High Innovation amounting to hundreds of thousands of dollars.[9]

7. Debtor noted on one check, which she wrote to herself, that it was for "legal compensation of ownership." Tr. of Proceedings (Dec. 7, 1999), at 181–82.

8. Debtor deposited checks into the High Innovation bank account on behalf of High Innovation, including those checks payable by Nikon arising from the fraudulent scheme.

9. Debtor applied for and used a corporate credit card on which she charged thousands of dollars of purchases, which were paid for by High Innovation, including business as well as personal and family expenses.

10. Debtor represented herself to be the sole owner of High Innovation on documents and tax returns, and signed income tax returns. Debtor also signed the check for the lease

**9.** Trial Exhibit 341 was a summary of the checks, but it has not been included in the excerpts of record. These facts were not challenged, however.

of the business space, even though at the time, Takehiko was authorized to sign checks.

11. Debtor arranged for utility service, repairs and improvements to High Innovation's business premises. She also accepted deliveries, picked up mail and performed cleaning services there. She also went to the business premises just "to get out of my house." *Id.* at 78.

12. Debtor obtained thousands of dollars worth of benefits from the Nikon income and High Innovation, including (1) payments to herself aggregating more than $100,000; (2) hundreds of thousands of dollars of payments for personal expenses of Debtor and her family; (3) use of the money to dramatically improve Debtor's standard of living, including the purchase of two additional houses, for approximately $870,000, and three cars.

The evidence of the formation and use of High Innovation as a partnership to conduct business with Nikon was overwhelming. So, too, is the evidence of Takehiko's role as an agent for Debtor and High Innovation. Thus, the court's findings were not clearly erroneous.

### B.

### *Imputation of Fraud Using Agency Principles Was Appropriate*

█ The bankruptcy court then properly concluded that Takehiko's fraud was imputed to Debtor based on their partnership relationship. Their business relationship was separate from their marital or community status. As we stated in *Tsuru-*

*kawa I,* "[c]ertainly, spouses can be partners in a business enterprise where agency principles apply." *Tsurukawa I,* 258 B.R. at 198. Therefore, the finding that Debtor was a "principal" of Takehiko did not unfairly affect the marital community because their business partnership was the foundation for their agency relationship.

In *Tsurukawa I,* we reviewed the statutes, legislative history, and case law, and observed that such vicarious liability, if applied at all, could only be founded upon strict[10] agency/partnership principles where the married debtors are also business partners.

█ To start, we look to the language of the statute. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Congress delineated the type of "fraud" required under § 523(a)(2). For a debt to fall within the § 523(a)(2) exception to dischargeability, the debtor must have committed positive, actual fraud, and not constructive fraud or fraud implied in law. *See* 124 Cong. Rec. H11095–96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978) (statements of Rep. Edwards and Sen. DeConcini). *See also Neal v. Clark,* 95 U.S. 704, 709, 24 L.Ed. 586 (1877) (holding that the fraud necessary to render a debt nondischargeable is actual fraud, "involving moral turpitude or intentional wrong . . .; and not implied fraud, . . . which may exist without the imputation of bad faith or immorality.").

Notwithstanding the nature of fraud necessary to create a nondischargeable debt, the statute is silent about whether such fraud can or cannot be imputed to another based on the common law of part-

---

**10.** The term "strict" agency or partnership principles is used in the case law to describe the imputation of fraud to "innocent" parties regardless of their knowledge of the fraud or their own culpability. *See Tsurukawa I,* 258 B.R. at 198 (quoting *La Trattoria, Inc. v. Lansford (In re Lansford),* 822 F.2d 902, 904–05 (9th Cir.1987)).

nership and agency. However, that issue was settled over one hundred years ago by *Strang v. Bradner*, 114 U.S. 555, 561, 5 S.Ct. 1038, 29 L.Ed. 248 (1885), where the Supreme Court imputed the fraud committed by one partner to the other partners. In enacting the Bankruptcy Reform Act of 1978, Congress expressed no clear intent in § 523(a)(2)(A) to legislatively overrule the case law making nondischargeable a partner's or principal's debt for the fraud of an agent. *See Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 504–06, 509, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (stating if Congress intends to alter a statutory interpretation of longstanding, it clearly expresses that intent).

■ Under *Neal* and *Strang*, therefore, a debt may be excepted from discharge either when (1) the debtor personally commits actual, positive fraud, or (2) the actual fraud of another is imputed to the debtor under partnership/agency principles.

■ This approach suits the purposes of the Bankruptcy Code. The § 523(a)(2)(A) statutory exception to discharge for debts for money obtained by "false pretenses, false representations or actual fraud" is meant to protect victims of fraud and prevent the use of bankruptcy as "an engine for fraud." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000).

Therein, Congress concluded that preventing fraud is more important than letting defrauder-debtors have a fresh start. *Id.* (citing *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 674 (7th Cir.1995)).

The "fresh start" principle does not and should not always override well-established common law and cognizable state law rights. *See Midlantic Nat'l Bank*, 474 U.S. at 506, 106 S.Ct. 755 (stating that Congress did not intend the Bankruptcy Code to preempt all state laws). Historically, partnerships are "conduits of liability," and "a standard axiom for any lawyer advising a client considering going into business using the partnership form is 'choose thy partner wisely.'" L. Ponoroff, *Vicarious Thrills: The Case for Application of Agency Rules in Bankruptcy Dischargeability Litigation*, 70 TUL. L. REV. 2515, 2523 (June 1996).

Furthermore, a growing majority of courts, including the Ninth Circuit, have followed *Strang* and its progeny in applying agency principles and in not requiring any knowledge on the "innocent" debtor's part of the fraudulent conduct. In *Cecchini*, a § 523(a)(6) case, a partner's wrongdoing, which occurred in the ordinary course of the partnership business, was imputed to an innocent partner for nondischargeability purposes.[11] *Cecchini*, 780 F.2d at 1444. *See also Tsurukawa I*, 258 B.R. at

11. Debtor contends that *Cecchini* is inapplicable because it has been overruled. The bankruptcy court's memorandum decision correctly pointed out that *Cecchini* was overruled only as to the legal standard for determining the nondischargeability of a "willful and malicious" injury for purposes of § 523(a)(6). However, the portion of *Cecchini* that addressed vicarious liability for acts of an agent has not been overruled. *Cecchini* is applicable here on the issue of imputed liability, not intent.

In addition, Debtor contends that *Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir.2002), a § 523(a)(6) opinion decided after judgment

was rendered in this case, requires the showing of subjective intent to injure, so that fraud cannot be imputed. *Id.* at 1146. *Su* does not control this appeal. There, the Ninth Circuit analyzed tortious conduct and the intent needed to prove a "willful and malicious" injury. It involved neither the elements of fraudulent intent nor the imputation of fraud. *See Tustin Thrift & Loan Ass'n v. Maldonado (In re Maldonado)*, 228 B.R. 735, 738–39 (9th Cir. BAP 1999) (argument that *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), controlled intent for purposes of § 523(a)(2)(B) was misplaced).

197 (citing *Cecchini* ); *In re M.M. Winkler & Assocs.*, 239 F.3d 746, 749 (5th Cir.2001) (following *Strang* to hold that a debt incurred through one partner's fraud was nondischargeable as to other partners, who were neither aware of the fraud nor benefitted from it); *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1561 (6th Cir.1992), *cert. denied*, 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993) (holding that a debt based on the debtor's partner's fraud was nondischargeable, even though the debtor neither knew of nor ratified his partner's fraud). *Cf. Hoffend v. Villa (In re Villa)*, 261 F.3d 1148, 1151 (11th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 2328, 153 L.Ed.2d 159 (2002) (stating that fraud imputed to the debtor under agency principles may be excepted from discharge, but not extending *Strang* to include liability under § 20(a) of the Securities Exchange Act). In addition, the Third Circuit has not ruled on this issue, but in dicta has observed that "common law principles of agency law would probably dictate the imputation of an agent's fraud to a principal" under § 523(a)(2)(B). *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1119 (3rd Cir.1995).[12]

The Ninth Circuit has also looked at imputed fraud in the marriage situation. In *Lansford*, 822 F.2d at 904–05, it found evidence of fraudulent intent on the part of a wife who participated in a purchase and sale transaction and signed real estate documents, even though it was her husband who presented a false financial statement to the seller. The court expressly declined, however, to consider whether the debt would be nondischargeable as to the wife under the law of agency. It stated: "Were we to rely on strict agency or partnership principles, we might be forced to conclude that Cecily Lansford's debt is non-dischargeable regardless of her knowledge of the fraud or her own culpability." *Id.* at 904. The court refused to discuss the application of agency principles without the opportunity for "a more thorough consideration" of the proposition "[i]n light of the bankruptcy code's purpose of providing a fresh start." *Id.* at 904–05.[13]

Cecily Lansford was not determined to be a business partner of her husband, however. It is generally held that the marriage relationship itself is an inappropriate basis for imputing fraud. *See also Tsurukawa I*, 258 B.R. at 198; *Allison v. Rob-*

---

**12.** Other circuits only impute the fraud of a debtor-principal to an agent if the principal either knew or should have known of, or was recklessly indifferent to, the agent's fraud. *See, e.g., Walker v. Citizens State Bank (In re Walker)*, 726 F.2d 452, 454 (8th Cir.1984); *David v. Annapolis Banking & Trust Co.*, 209 F.2d 343, 344 (4th Cir.1953); *In re Lovich*, 117 F.2d 612, 614–15 (2nd Cir.1941).

We note, however, that some potential challenges have been made to these holdings in the Second and Eighth circuits. *See Owens v. Miller (In re Miller)*, 276 F.3d 424, 431 (8th Cir.2002) (Beam, J., dissenting) (stating "Congress created an exception from discharge for fraud in § 523(a)(2)(A), and *Strang* tells us that the fraud need not have been perpetrated by the debtor in order to be nondischargeable."); *Nat'l Union Fire Ins. Co. v. Bonnan-*

*zio (In re Bonnanzio)*, 91 F.3d 296, 302 (2nd Cir.1996) (noting conflict among circuits on issue of imputation of fraud using strict agency principles, but declining to decide issue as unnecessary).

**13.** The Ninth Circuit subsequently cited *Lansford* in deciding that an innocent spouse's discharge could not be denied where she "had no knowledge of her husband's business affairs, did not participate in the transfer or removal of assets, and lacked an actual intent to hinder, delay or defraud a creditor or an officer of the estate." *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir.1994) (a § 727(a) case). Clearly, in *Cox*, the wife was not found to be her husband's business partner, nor did the opinion discuss agency principles in § 523 proceedings. Therefore, *Cox* is limited in its application here.

erts *(In re Allison)*, 960 F.2d 481, 486 (5th Cir.1992). *Cf. Synod of S. Atlantic Presbyterian Church v. Magpusao (In re Magpusao)*, 265 B.R. 492, 498 (Bankr.M.D.Fla. 2001) (citing cases, but holding that the spouse's knowledge of the misconduct concurrent with participation in the use or enjoyment of the misappropriated property confers liability).

We have held, therefore, that in order to impute fraud to a spouse, there must be a "partnership or other agency relationship." *Tsurukawa I*, 258 B.R. at 198. *See also Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1284 n. 10 (5th Cir.1992) (per curiam) (holding where there are no facts showing individual culpability on the part of an "innocent" spouse, fraud can still be imputed under partnership or agency principles if that spouse is also a business partner of the fraudulent spouse). We adhere to that view.

Our prior decision in *Tobin*, which was filed the same day as *Tsurukawa I*, does not compel a different result. The *Tobin* decision reversed a summary judgment of nondischargeability under § 523(a)(2)(A) against a debtor shareholder of a corporation who had been held liable in state court on an alter ego theory for misrepresentations of another shareholder in connection with a loan to the corporation. Our panel held that the state court's findings, in this complicated situation, regarding the misconduct of another shareholder and alter ego were insufficient to foreclose genuine issues of material fact regarding the debtor-shareholder's liability for fraud.

*Tobin* contained misleading dicta suggesting that *Lansford* had held that personal involvement of the debtor is essential to a finding of nondischargeability for fraud. *Tobin*, 258 B.R. at 205–06. While the Ninth Circuit panel in *Lansford* expressed discomfort with the settled law of

the circuit, *Lansford*, 822 F.2d at 904–05, it was not purporting to circumvent the circuit's en banc procedure and change the law of the circuit in the face of contrary Supreme Court authority dating back to *Strang*. In sum, *Tobin* must be construed in the context of the specific findings by the state court, which were held insufficient to support summary judgment in the corporate shareholder/alter-ego context, and does not stand for a larger proposition.

Our holding in the present appeal does not intrude on a married couple's community status, a result averted by the *Lansford* court, but would instead make married business partners liable for their partnership obligations under well-established agency principles. Based on the foregoing, we hold that fraud may be imputed to a spouse under partnership/agency principles in a § 523(a)(2)(A) action.

### CONCLUSION

In a § 523(a)(2)(A) action, one spouse's fraud may be imputed to the other spouse under agency principles when, as in this case, they are also business partners. The court correctly found that such a partnership existed here and that the law of agency applied in order to hold Debtor vicariously liable for Takehiko's fraud. We therefore **AFFIRM** the bankruptcy court's January 14, 2002 judgment of nondischargeability as to Debtor.