NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-12-1226-BePaMk |
| | ) | |
| KOKO SARKIS BABIAN, | ) | Bk. No. LA 10-48241-PC |
| | ) | |
| Debtor. | ) | Adversary No. LA 10-03244-PC |
| | ) | |
| KOKO SARKIS BABIAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| VAHE TAMAMIAN; KRIKOR TAMAMIAN, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Argued and Submitted On November 15, 2012,
at Pasadena, California

Filed January 4, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Chief Bankruptcy Judge, Presiding

Appearances:     Paro Asturian, Esq. of Astourian and Associates
Inc. argued on behalf of appellant Koko Sarkis
Babian; Theodore Kenrick Roberts, Esq. of Roberts &
Roberts argued on behalf of appellees Vahe Tamamian
and Krikor Tamamian.

Before: BEESLEY,[**] PAPPAS, and MARKELL Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

[**]Hon. Bruce T. Beesley, Bankruptcy Judge for the District
of Nevada, sitting by designation.

1

This case involves two individuals, two separate bankruptcy cases, and two separate adversary proceedings. The individuals were allegedly partners in a business venture to develop condominiums. Finding that they were partners, the same bankruptcy court that rendered a judgment excepting a debt from discharge under Section 523(a)(2)(A) as to one debtor imputed that debtor's fraudulent conduct to the debtor named in the adversary proceeding from which this appeal arises. Because we conclude that was error, we VACATE the judgment entered in this case, and REMAND this matter to the bankruptcy court for further proceedings.

**STATEMENT OF FACTS**

**A. The Pre-bankruptcy Proceedings**

**1. The Property.**

In September 2004, debtor/Appellant ("Debtor") Koko Sarkis Babian, a.k.a. Krikor Babaoghli, together with Garabed Babian, Ashout Markarian ("Markarian"), and Nazaret Moukhtarian (collectively the "co-owners") purchased unimproved real property known as 1906-1910 New York Drive, Altadena, CA (the "Property") for $235,000. They purchased the Property with the intention of building condominiums on the Property. The four individuals took title to the Property as tenants-in-common.

Prior to purchasing the Property, the co-owners had an

---

***Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All Civil Rule references are to the Federal Rules of Civil Procedure.

unlicensed architect (the "Architect") investigate whether they could develop four condominium units on the Property. The Architect informed the co-owners prior to purchase that the Property was suitable for only three condos, due to a problem requiring street dedication and widening.

Considerable work was needed on the Property before it could be developed. Power poles would potentially need to be relocated and the power lines placed underground. Debris and asphalt on the Property had to be removed before development could begin. The street lights might need to be relocated, or new street lights had to be built. Also, a bus stop and oak tree might have to be removed.

In August 2005, the co-owners sought to take advantage of a favorable real estate market and sell the Property for $660,000.00 The Property did not sell.

On March 19, 2006, Markarian met with a long-time friend, Dr. Odabashian, in Las Vegas and told him that he and what he referred to as his "partners" had the Property for sale for $500,000. Markarian stated the Property was ready for development of three condos and that the plan and permits were ready. As soon as the permits were acquired, which would cost approximately $25,000 to $35,000, construction could begin.

Markarian knew that the development-related issues created an impediment to economically prudent development of the Property. He also knew that if a prospective buyer became aware of these impediments, the price would have to be substantially reduced, if the Property could be sold for commercial development at all.

Markarian did not mention the development issues or potential

3

delays and costs involved in developing the Property, all of which were known to him for many months. Instead, Markarian, indirectly through Dr. Odabashian, told a potential buyer, Vahe Tamamian, that development of the Property needed nothing more than payment of the permits.

Markarian wanted to close the sale of the Property quickly. He told Dr. Odabashian to facilitate such a closing and offered to enter into an agreement providing for the following conditions:

> 1.) That the land will be cleared of all excess material and the material hauled from the property by the selling party,
>
> 2.) that the land be cleared as soon as possible after July 4th so as to make it possible for the purchaser to start with the building of the project,
>
> 3.) to hold $4,000 of the purchase amount from Mr. Ashout Markarian as a guarantee that such work will be done, and in a timely manner, and
>
> 4.) that there are no other disclosures the sellers are aware of which would make the building of the project prohibitive.
>
> 5.) Lastly, it is agreed that if the above conditions are not met, any expenditures arising out of such non-compliance, including, but not limited to attorney fees, interest and delay of initiation of the project will [be] the responsibility of the sellers.

Dr. Odabashian drafted the agreement, dated June 29, 2006, which was signed by Markarian and Vahe Tamamian shortly thereafter.

On July 30, 2006, Vahe Tamamian and Krikor Tamamian, (the "Appellees") purchased the Property for $500,000.[1] After closing, the Appellees spent six months and over $90,000.00 to clean and remove the asphalt, concrete, and other materials from the

---

[1] The sale price was $55,000 below the co-owners' appraised market value on the Property.

4

Property, relocate the power poles, and make necessary street improvements.

**2.    The State Court Proceedings.**

On February 4, 2008, the Appellees filed a lawsuit against all four co-owners for fraud and breach of warranty, among other claims, in the Los Angeles Superior Court, <u>Tamamian, et. al v. Garabed Babian, et. al</u>, Case #GC040297.  All of the co-owners were represented by counsel.

The case was heard as a binding arbitration.  Markarian was the only co-owner to arbitrate.[2]  The non-arbitrating co-owners did not participate or otherwise appear through their counsel.

**a.    The Arbitration.**

The arbitration hearing commenced on January 27, 2010, and continued for several sessions until final submission in late May 2010.  On June 17, 2010, the arbitrator issued a thirteen-page Arbitration Award in favor of the Appellees.[3]

**b.    Confirming The Arbitration Award.**

On December 7, 2010, the Appellees' petition to confirm the

---

[2]During oral argument, Debtor's counsel explained that Markarian was the only co-owner to sign a mandatory arbitration provision in the closing documents during the sale of the Property to Appellees.

[3]The arbitration award included in the record in this appeal does not contain any of the exhibits referenced in the arbitration award.  Damages awarded were: $4,000.00 for Property clearance; $21,933.00 for relocating the power poles; $65,963.00 for street improvements; $44,977 for carrying cost on loans, loan interest, real estate taxes during delay; and $25,000 punitive damages, totaling $161,873.00.  Attorney's fees of $86,673.37 were allowed.  The total award of consequential and punitive damages together with attorney's fees was $284,546.27.

arbitration award against Markarian was granted by the state court, and a judgment issued in conformity with the arbitration award. The court adopted the findings of fact in the arbitration award and supplemental award, and incorporated them into its judgment. No appeal was taken, and the state court judgment against Markarian became final on March 21, 2011.

**3. Markarian Bankruptcy Case.**

On February 16, 2011, Markarian filed a Chapter 7 bankruptcy petition. Appellees filed an adversary complaint against Markarian seeking a judgment of nondischargeability under Section 523(a)(2)(A). On January 4, 2012, the bankruptcy court entered a judgment of nondischargeability against Markarian under Section 523(a)(2)(A), based upon the preclusive effect of the findings against Markarian in the state court. The court held that the $248,548.37 award was nondischargeable against Markarian, representing the total of the attorney's fees, actual damages, and punitive damages awarded by the state court. That judgment against Markarian became final and non-appealable on January 18, 2012.

**B. The Babian Bankruptcy Case.**

On September 8, 2010, Debtor filed a Chapter 7 bankruptcy case.

**1. The Babian Adversary Proceeding.**

On December 8, 2010, Appellees filed an adversary proceeding against the Debtor seeking a judgment of nondischargeability under Section 523(a)(2)(A). Debtor filed an answer raising eight affirmative defenses.

6

### a.    The Summary Judgment Motion.

On September 30, 2011, the Appellees filed a motion for summary judgment ("Summary Judgment Motion").[4]  The Summary Judgment Motion asserts that, pursuant to the doctrine of collateral estoppel, the state court's fraud judgment against Markarian was preclusive for purposes of the bankruptcy case, and that Markarian's fraud could be imputed to Debtor, since they were partners.

Debtor filed an opposition to the Summary Judgment Motion which was supported by Debtor's declaration and exhibits.  Debtor argued that: 1) there was no partnership with Markarian, 2) he could not be held liable for acts not in the ordinary course of business of the alleged partnership, 3) he could not be held liable since he made no representations to Appellees, and 4) the court cannot give collateral estoppel effect to a state court arbitration award.

On February 14, 2012, the bankruptcy court held a hearing[5] for the purpose of announcing its findings of fact[6] and

---

[4]An earlier motion for summary judgment was heard and denied by the bankruptcy court.  The court specifically granted leave to file a renewed motion for summary judgment should additional information arise during discovery in the case.

[5]The transcript of the February 14, 2012 hearing states that it is a continuation from a prior hearing in which the court had granted summary judgment.  The transcript of the earlier hearing is not included in our record.

[6]Although Civil Rule 56(a), applicable here through Rule 7056, states that a "court should state on the record the reasons for granting or denying the [summary judgment] motion," that typically does not take the form of making findings of fact,
(continued...)

conclusions of law. The court's findings of fact originated from multiple sources. The court stated at the beginning of the hearing that:

> [t]he following facts are derived from the Debtor's testimony, and the arbitrator's finding and award in a prior state court action against – that was pending against all of the defendants, but the state court award was directed to Mr. Ashout Markarian. [Tr. Hrg. (February 14, 2012) at p. 2].

At the conclusion of the hearing, the court stated:

> Finally, we have all of the findings against Mr. Markarian, both in the state court, for which this Court found preclusive effect in the 523(a) action against Mr. Markarian in this court, and upon which the Court based its judgment, finding that the debt of $248,548.37 was nondischargeable against Markarian on January 4th, 2012.
>
> [T]he Court adopts its findings of fact and conclusions of law in the Markarian case that supported its judgment entered on January 4, 2012,[7] and holds that the debt of Mr. Babian to the Plaintiffs in this adversary proceeding in the amount of $248,548.37, which represents actual damages of $161,873, plus attorney's fees of $86,675.37, is nondischargeable under Section 523(a)(2)(A). [Tr. Hrg. (February 14, 2012) at pp. 13-14].

On April 17, 2012 the bankruptcy court entered summary judgment in favor of the Appellees. The court adopted each of the findings of fact and conclusions of law from the February 14, 2012 hearing as well as the court's findings of fact and conclusions of

---

[6](...continued)
as summary judgment is appropriate only when there are no facts to be found; that is, when "there is no genuine dispute as to any material fact . . . ." Civil Rule 56(a).

[7]Although adopted into the court's findings of fact and conclusions of law in this case, the court's findings of fact and conclusions of law related to the Section 523(a)(2)(A) judgment in the Markarian adversary proceeding have not been made a part of this record.

8

law from Markarian's adversary proceeding. Although it is unclear, the court may have imputed Markarian's fraud as found in the discharge exception action in his bankruptcy case to Debtor in this case and granted summary judgment on that basis.[8] Debtor appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Did the bankruptcy court err when it applied the doctrine of issue preclusion from the state court judgement to Debtor?
2. Did the bankruptcy court err when it imputed Markarian's fraud to Debtor?
3. Did the bankruptcy court err when it found that Debtor and Markarian were partners?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision to grant summary judgment. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP

---

[8] It is not entirely clear which of two different fraud judgments against Markarian (the state court judgment, or the Markarian Section 523(a)(2)(A) judgment) the court may have deemed preclusive to the Debtor in this case. The bankruptcy court references both judgments in its statement of issues to be addressed. It appears more likely that the court relied upon the Markarian Section 523(a)(2)(A) judgment. As discussed in more detail below, relying upon the Markarian Section 523(a)(2)(A) judgment would have been error. See, infra Discussion Section "B."

9

2007).  Viewing the evidence in the light most favorable to the non-moving party (i.e., Debtor), we determine whether the bankruptcy court correctly found that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994); Gertsch v. Johnson & Johnson (In re Gertsch), 237 B.R. 160, 165 (9th Cir. BAP 1999).

The availability of issue preclusion is a question of law the BAP reviews de novo.  Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012)(citing Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006)).  If issue preclusion is available, the decision to apply it is reviewed for abuse of discretion.  Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006).  When state preclusion law controls, such discretion is exercised in accordance with applicable state law.  Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800-01 (9th Cir. 1995).  A bankruptcy court abuses its discretion when it applies the incorrect legal rule or its application of the correct legal rule is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010) (quoting United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009)(en banc)) (internal quotation marks omitted).

## DISCUSSION

Debtor raises several arguments supporting his belief that the bankruptcy court erred in granting the Appellees' Motion for Summary Judgment.  For the reasons set forth below, we vacate the

bankruptcy court's judgment and remand this matter.[9]

## A.    Bankruptcy Court's Application of Issue Preclusion.

Debtor argues that the bankruptcy court improperly applied issue preclusion concepts when it adopted the arbitration award findings related to the alleged partnership between Markarian and Debtor.

A review of the bankruptcy court's decision reveals that the court conducted no issue preclusion analysis.  Nonetheless, the record before us suggests that the bankruptcy court based its decision entirely upon its determinations concerning the existence of a partnership between Markarian and the Debtor, that the sale of the Property took place within the ordinary course of their partnership, and the bankruptcy court's imputation of Markarian's fraud as found in the Section 523(a)(2)(A) action in his bankruptcy case to Debtor.[10]  Under these circumstances, any

---

[9]Our efforts to substantively review this case have been significantly hampered by the failure of both parties to fully comply with the Federal Rules of Appellate Procedure and the Bankruptcy Appellate Panel Rules.  See Fed. R. App. P. 10(b)(2); BAP Rule 8006-1.  While we may affirm the bankruptcy court's decision on any basis supported in the record, Barnes v. Belice (In re Belice), 461 B.R. 564, 579 (9th Cir. BAP 2011), neither party has provided us with a complete version of the record on which the bankruptcy court relied in rendering its decision.  In this instance, the absence of a complete record has worked against the Appellees' interests because it has impaired our ability to identify whether there are any alternate grounds for affirmance.

[10]Although the court identified the issues that it was going to address in its findings and conclusions, the court did not conduct the six step issue preclusion analysis regarding either the state court judgment or the Markarian Section 523(a)(2)(A) adversary proceeding judgment. See, Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 824-25 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007).

11

reliance upon the arbitration award findings, or the state court's adoption of those findings, would have been error.[11]

**B.   Bankruptcy Court's Determination of Nondischargeability Under Section 523(a)(2)(A).**

The bankruptcy court had before it deposition evidence related to the question of Debtor's alleged partnership with Markarian and whether the sale of the Property was in the ordinary course of the partnership.  The court had no evidence to directly support a finding of fraud, other than the findings of fact and conclusions of law set forth in the arbitration award and state court judgment.  Since the bankruptcy court did not consider the six issue preclusion factors identified in Khaligh, supra, it could not have properly relied on the arbitration award or the state court findings.  Consequently, the court had no valid basis for determining that the Debtor had committed fraud independent of imputing Markarian's fraud, which is discussed below.

**1.   Imputation of a Partner's Fraud Under Section 523(a)(2)(A).**

"[A] debt may be excepted from discharge either when (1) the

[11]Issue preclusion is not applicable in this case.  The issues before the bankruptcy court were different from the issues litigated in the state court or in Markarian's adversary proceeding.  Neither the arbitrator, state court, nor bankruptcy court addressed the question of inter-partner imputation.  Additionally, an arbitration award cannot have nonmutual issue preclusion effect unless the party that did not participate in the arbitration agrees to such treatment.  Vandenberg v. Super. Ct., 21 Cal.4th 815, 836-37, 88 Cal.Rptr. 366, 381, 982 P.2d 229, 242-43 (1999); Berglund v. Arthroscopic & Laser Surgery Ctr. of San Diego, L.P., 44 Cal.4th 528, 537, 187 P.3d 86, 91, 79 Cal.Rptr.3d 370, 376 (2008); In re Khaligh, 338 B.R. at 825 n.4.  There is nothing in our record reflecting that Debtor agreed to be bound by Markarian's arbitration award.

debtor personally commits actual, positive fraud, or (2) the actual fraud of another is imputed to the debtor under partnership/agency principles." Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 287 B.R. 515, 525 (9th Cir. BAP 2002) ("In re Tsurukawa II"). Actual fraud may be imputed to a debtor for nondischargeability purposes even where the debtor has no knowledge of that fraud. In re Tsurukawa II, 287 B.R. 525-26. See also, Wheels Unlimited, Inc. v. Sharp (In re Sharp), 2009 W.L. 511640 *4 (Bankr. D. Idaho 2009).

The United States Supreme Court has long held that partners can bind each other in liability if they commit wrongful acts within the scope of their partnership business. In Strang v. Bradner, 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885), the Court held that because there was a partnership relationship and because the wrongdoing involved a partnership transaction, the wrongdoing of a partner was imputed to the innocent debtor partners. The court reasoned that:

> [e]ach partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge.

Strang, 114 U.S. at 561, 5 S.Ct. 1038. Several courts have relied upon Strang to impute the wrongful conduct of one party to a debtor for purposes of nondischargeability. See, e.g. Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 258 B.R. 192, 197-98 (9th Cir. BAP 2001) ("In re Tsurukawa I"); Deodati v. M.M. Winkler

13

& Assoc. (In re M.M. Winkler & Assoc.), 239 F.3d 746, 748-49 (5th Cir. 2001); BancBoston Mortg. Corp. v. Ledford (In re Ledford), 970 F.2d 1556, 1561 (6th Cir. 1992).

In In re Cecchini, a § 523(a)(6) case, a partner's wrongdoing that occurred in the ordinary course of the partnership business was imputed to an innocent partner for nondischargeability purposes. Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini), 780 F.2d 1440, 1444 (9th Cir. 1986), abrogated on other grounds, Kawaauhau v. Geiger, 523 U.S. 57, 60, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). More recently, in In re Tsurukawa II, this panel held that a spouse's fraud could be imputed to the other spouse under agency principles when they are also business partners. In re Tsurukawa II, 287 B.R. at 527. Thus, Markarian's fraudulent conduct can potentially be imputed to Debtor, his alleged partner, by applying basic partnership principles.[12]

### 2. The Bankruptcy Court's Determination of Partnership Between Markarian and Debtor.

Debtor attacks the bankruptcy court's determination that Markarian and Debtor were partners, arguing that Debtor was a passive investor and engaged in no activity on behalf of the

---

[12]In California, each partner is an agent of the partnership and binds the partnership for all acts in the ordinary course of the partnership's business. Cal. Corp. Code § 16301(1)(West 2006). All partners are jointly and severally liable for all obligations of the partnership. Cal. Corp. Code § 16306(West 2006). A partner acting outside the ordinary course of business can still bind the partnership if the act was authorized by the other partners. Cal. Corp. Code § 16301(2)(West 2006). Consistent with this concept "[a] partnership is liable for loss . . . caused to a person . . . as a result of a wrongful act or omission . . . of a partner acting in the ordinary course of business of the partnership or with authority of the partnership." Cal. Corp. Code § 16305(a)(West 2006).

14

alleged partnership.  Debtor asserts everything the Debtor did was consistent with co-ownership, not partnership, and notes that taking title to the Property as tenants in common[13] was inconsistent with a finding of partnership.  Debtor is correct.  Genuine issues of material fact exist regarding whether the Debtor and Markarian were partners.

Debtor relies upon several California statutory provisions to show that he and Markarian were mere co-owners of the Property, not partners.  For example, joint ownership of property does not, by itself, establish a partnership.  Cal. Corp. Code, § 16202(c)(1) (West 2006).  Nor does sharing gross returns, by itself, establish a partnership.  Cal. Corp. Code § 16202(c)(2) (West 2006).  Although a person receiving a share of profits from a business is presumed to be a partner, the presumption disappears if the profit arises solely from an increase in the value of the collateral, as it did in this case.  Cal. Corp. Code § 16202(c)(3)(E) (West 2006).  Thus, neither joint ownership nor sharing profits are dispositive in determining if there was a partnership.

Here, the parties took title to the Property as tenants in common.  In California, holding real property as tenants in common is mutually exclusive with holding title as a partnership.  "An interest in common is one owned by several persons, not in joint ownership or partnership."  Cal. Civ. Code § 685 (West 2007).  There is also a rebuttable presumption that property is not

---

[13]Cal. Civil Code § 685 provides "[a]n interest in common is one owned by several persons, not in joint ownership or partnership."  Cal. Civil Code § 685 (West 2007)(emphasis added).

15

partnership property, "even if used for partnership purposes," if the property is "acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets. . . ." Cal. Corp. Code, § 16204(d) (West 2006). Here, the Property was titled in the names of the four individuals as tenants in common. As such, there was a rebuttable presumption that the Property was not partnership property.[14]

Notwithstanding the statutory provisions relied upon by the Debtor, the bankruptcy court and Appellees rely upon other statutory provisions to show that a partnership existed between Markarian and the Debtor.

In California, "[t]he association of two or more persons to carry on as co-owners of a business for profit forms a partnership, <u>whether or not the persons intend to form a partnership</u>." Cal. Corp. Code § 16202(a) (emphasis added). Thus two or more individuals carrying on as co-owners of a business for profit may form a partnership, even if they did not intend to form one. "[C]o-ownership of any sort, as well as profit-sharing, are factors tending to establish partnership." <u>In re Tsurukawa II</u>, 287 B.R. at 521.

Additionally, being passive in business dealings does not

---

[14]In California, "[a] partner is not a coowner of partnership property and has no interest in partnership property that can be transferred, either voluntarily or involuntarily." Cal. Corp. Code § 16501. <u>Munkdale v. Giannini</u>, 35 Cal.App.4th 1104, 1111, 41 Cal.Rptr.2d 805, n.6 (Cal.App. 1 Dist. 1995) (The partnership owns its property and the partners do not).

prevent a finding of partnership. "[A] partnership can exist as long as the parties have the right to manage the business, even though in practice one partner relinquishes the day-to-day management of the business to the other partner." In re Tsurukawa II, 287 B.R. at 522 (citations omitted).

Ultimately, the existence of a partnership is a question of fact, determined from the parties' agreement, their conduct, and the surrounding circumstances. Holmes v. Lerner, 74 Cal.App.4th 442, 454, 88 Cal.Rptr.2d 130, 139 (Cal.App. 1 Dist 1999). Since there was no written agreement, the existence of the partnership in this case must be gleaned from the parties conduct and the surrounding circumstances.

> It is well settled in California that a partnership may be formed by parol even though its sole purpose is to deal in real estate. If a partnership is formed and real property is dedicated to partnership use and is used by the partnership for its sole benefit, the fact that title was acquired by one or more of the partners with their private funds or was owned by them as tenants in common prior to the formation of the partnership will not necessarily defeat the claim of the partnership to ownership of the property in the absence of an express agreement that it should remain property of those in whose names title stood. Under such circumstances the owners of the legal title hold the property in trust for the partnership.

Swarthout v. Gentry, 62 Cal.App.2d 68, 78, 144 P.2d 38, 43 (Cal.App. 4 Dist. 1943) (citing Bastjan v. Bastjan, 215 Cal. 662, 668, 12 P.2d 6127 (Cal. 1932)) (citations omitted)(emphasis added); En Taik Ha v. Kang, 187 Cal.App.2d 84, 91, 9 Cal.Rptr 425, 430 (Cal.App. 2 Dist. 1960) (Ranch property came to the parties as tenants in common, but that character was destroyed when the parties operated it as partnership property and it became a partnership asset.). See also, Strand v. Clark, 2010 W.L. 2496390

17

(Cal.App. 2 Dist. 2010). <u>Accord</u>, Cal. Civ. Code Section 686 (West 2006).[15]

The bankruptcy court determined numerous facts to be undisputed based on the Debtor's deposition testimony, as well as the arbitration award and other evidence adopted into the record which is not available for our review. As discussed above, any reliance upon the arbitration findings was improper. As such, the facts the court relied on were undisputed only if the Debtor's deposition testimony supports that conclusion. The court determined the following facts to be undisputed based on the Debtor's deposition testimony:

> The Debtor, Mr. Babian, concedes that the Debtor co-owned the property with Markarian and other parties. . . .
>
> * * * * *
>
> The Debtor concedes that it shared the profits of the sale of the property. The Debtor's deposition testimony admissions -- deposition testimony and admissions establish that a partnership existed with respect to the property as a matter of law.
>
> The Debtor testified that he saw the chance to purchase the property for $235,000 as a good investment opportunity. An opportunity to, quote:
>
> > "Make some money." close quote
>
> In response to a question regarding his intentions in purchasing the property with the other co-owners, he states, quote:
>
> > ". . . I was told there is a good opportunity. That I should put some money in, and we

---

[15]"Every interest created in favor of several persons in their own right is an interest in common, <u>unless acquired by them in partnership, for partnership purposes</u>, or unless declared in its creation to be a joint interest, as provided in Section 683, or unless acquired as community property." Cal. Civ. Code § 686 (West 2007) (emphasis added).

18

> probably can build it and sell it.  And so,
> you know, I invested some money in order to
> make some money out of it."

Deposition, page 11 at lines 19 to 23.

> The evidence shows that the property was bought for
> $235,000 by Markarian, the Debtor, and two other
> parties, as co-owners in 2004, and they held title as
> tenants in common.  According to the Debtor's (sic)
> testimony, each party had a 25-percent interest in the
> property.  The Debtor further admits that the parties
> originally intended to build and sell condominium units
> on the property.

> The co-owners never built the condos.  However, the
> undeveloped property was eventually sold to Plaintiff
> for $500,000.  Each co-owner received proceeds of
> $125,000, which corresponds to each co-owner's
> 25-percent interest in the property.

> Moreover, the Debtor designated the business association
> as a partnership in the property ownership status, Form
> 1099 from Colonial Escrow, which is the form that the
> Debtor himself filled out.

Additional undisputed facts in the record that potentially support the bankruptcy court's determination that the Debtor and Markarian had formed a partnership include that the co-owners had hired an architect to both conduct a site evaluation (before they bought the Property) and do design structural work on condominiums, and that the parties were pursuing necessary building permits, communicating with Con Edison, and resolving the bus stop problem.

Many of the facts the bankruptcy court relied upon are equivocal, in that they relate directly to a California statute that provides that such a fact is either not by itself evidence of a partnership[16], creates a rebuttable presumption that property is not partnership property[17], or is mutually exclusive with a

---

[16]Cal. Corp. Code, §§ 16202(c)(1), (2), and (3).

[17]Cal. Corp. Code, §§ 16204(d).

partnership[18]. Only one fact stands out as unambiguously supporting a finding of partnership - the 1099 Form that was filled out by the Debtor identifying the Property as being partnership property. However, that fact, alone, is insufficient to support summary judgment.

Debtor argued that each of the facts noted by the bankruptcy court is evidence of both co-ownership and of partnership. We agree. Debtor also correctly argues that the bankruptcy court was compelled to view the evidence and these facts in Debtor's favor. When Debtor's deposition testimony is viewed in the Debtor's favor, we conclude that genuine issues of material fact remain unresolved regarding whether there was a partnership between Markarian and the Debtor.

It is worth noting that the bankruptcy court had the benefit of significantly more evidence to evaluate and with which to render its decision. Unfortunately, that evidence is not present in our record. The paucity of evidence included in the record in this case has hindered our review and compels our conclusion on this appeal.

Having determined that genuine issues of material fact remain regarding the alleged partnership between Markarian and Debtor, we need not reach the remaining issues raised by Debtor.

**CONCLUSION**

For these reasons, the summary judgment entered by the bankruptcy court is VACATED, and this matter is REMANDED.

---

[18]Cal. Civil Code § 685.

20